## Bell, Insurance Commissioner of Kentucky v. Louisville Board of Fire Underwriters.

(Decided February 16, 1912.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Insurance Commissioner—Authority to Examine Insurance Companies.—Section 752, Kentucky Statutes confers upon the Insurance Commissioner the power to examine an insurance company. (a) If he believes it to be in an unsound condition. (b) If he believes it is violating the law. (c) Whenever he deems it prudent for the protection of policy holders.

2. Same.—The fact that the Insurance Commissioner is without power to establish insurance rates does not prevent him from examining into the condition and business of an insurance company on any of the grounds indicated, for, though himself without power to regulate rates, if the examination discloses that the insurance company is one of an association of such companies engaged in violating the law by suppressing competition in rates, he may and should report that fact to the Attorney General or General Assembly for such action as may be needful to remedy the evil.

3. Same.—If the inquisitorial power possessed by the Insurance Commissioner may be exercised in examining the condition and business of a single insurance company or its agents to ascertain whether it has violated the law, or because the protection of the policy holders requires such examination, it may also be exercised by him, on like grounds, in making an examination of an association of insurance companies, or an association of the agents of such companies.

4. Same.—As the appellee, Board of Fire Underwriters, arbitrarily fixes rates of insurance and its membership is composed wholly of the agents of insurance companies benefitted thereby, and the expense of maintaining the association, compiling its books, surveys and other records, is paid by the insurance companies, and such books, surveys and other records are used in conducting the business of the insurance companies, the Insurance Commissioner has the right to make the examination of such books.

surveys and other records as demanded by him, and appellee should have submitted them to such examination.

CARROLL & MIDDLETON and T. B. McGREGOR for appellant.

HELM BRUCE and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

It appears from the record before us that this is an agreed case between Chas. W. Bell, Insurance Commissioner of Kentucky, and the Louisville Board of Fire Underwriters, presenting for adjudication, as allowed by section 637, Civil Code, the question, whether the insurance commissioner has a right, in his official capacity, to examine the records, books and papers of the Louisville Board of Fire Underwriters? The circuit court decided that the Insurance Commissioner did not have such right; hence this appeal.

In order that every aspect of the controversy may be understood, we here insert the agreement between the parties, which includes the facts out of which it, arose and the questions submitted.

"Charles W. Bell, Insurance Commissioner of the State of Kentucky, hereinafter called 'plaintiff,' and the Louisville Board of Fire Underwriters, hereinafter called the 'defendant,' state that there is a controversy between them which might be made the subject of a civil action; that the controversy is real and that this proceeding is in good faith to determine the rights of the parties. The facts are as follows:

"Plaintiff is the duly appointed, qualified and acting Insurance Commissioner of the State of Kentucky, and charged with all the duties and invested with all the powers, responsibilities and obligations conferred upon that officer by the laws of the Commonwealth.

"Defendant is a voluntary, unincorporated association, the organization and purposes of which are shown by the Constitution, by-laws and rules of the organization. A copy of said constitution, by laws and rules is filed herewith and made part of the statement of facts in this case, the same as if fully set out herein marked exhibit 'A.' The members of the defendant organization have access to the surveys, books, records and papers of the defendant and in the transaction of their business as insurance agents have the right to use and do use such of the surveys, books, records and papers as

are of use or value to them in the transaction of their business.

"Defendant fixes the rates of fire and tornado insurance which it considers proper to be charged upon property in the city of Louisville, and exercises all the other powers, and performs all the other duties mentioned in its constitution, by-laws and rules, and in doing so uses its survey, books, records and papers so far as relevant to such subject. No insurance company is bound, or is required to agree to charge the rates thus fixed or comply with the other conditions imposed; but if any insurance company fails to charge such rates, or comply with the other conditions imposed, and does charge rates inconsistent therewith, or act contrary to the other conditions imposed, then any member of the defendant who is an agent of such company is required either to surrender such company or cease to be a member of defendant.

"Plaintiff has heretofore demanded of defendant the right to inspect its surveys, books, records and papers which are used as aforesaid; and he has also demanded of certain individual agents licensed by the State, who are members of defendant, that they permit him to inspect and examine such of the surveys, books, records and papers of defendant as are used by them as hereinbefore described. Said demands were refused.

"Plaintiff does not desire to make said examination, because he believes, or has reason to believe that any insurance company, whose agent is a member of defendant, is in an unsound condition, but he desires to make said examination because complaint has been made to him that the premium rates charged for insurance by companies whose agents are members of defendant are excessive and he deems it prudent, therefore, for the protection of the policy holders of this Commonwealth to make said examination. He has issued and published an opinion stating his views and purposes with reference to the proposed investigation which is filed herewith as part hereof marked 'exhibit B.'

"The defendant has been an organization, doing business under its present name, and with the same general purposes and of the same general character, continuously since the year 1854 (except for a brief period during the Civil War), and within this period of time no license has ever been issued to it as an insurance agent, nor has any insurance commissioner or public officer of

Kentucky, so far as known to plaintiff or defendant, or any of its officers ever asserted or demanded the right to make an examination of the records, books or papers of defendant, until the present demand was made.''

Upon the foregoing statement of facts the questions to be determined are as follows:

''1. Has plaintiff the right to examine the surveys, books, records and papers of the defendant?

''2. Has the plaintiff the right to require individual agents, who are members of the defendant, to produce for his inspection and examination, any of the surveys, books, records or papers of the defendant?''

It is conceded by the parties that whatever right or power of examination rests in the Commissioner is derived from section 752, Kentucky Statutes, which together with section 753, whose provisions throw light upon its meaning, we also insert in the opinion.

Section 752:

Before granting certificates of authority to an insurance company to issue policies or make contracts of insurance, he shall be satisfied, by such examination and evidence as he sees fit to make and require, that such company is otherwise duly qualified under the laws of the Commonwealth to transact business therein. As often as once in four years he shall personally, or by his deputy or chief clerk, or by some competent person, appointed by him for the purpose, visit each domestic insurance company, and thoroughly inspect and examine its affairs, especially as to financial condition and ability to fulfill its obligations, and whether it has complied with the laws. He shall also make an examination of any such company whenever he deems it prudent to do so, or upon the request of five or more of the stock holders, creditors, policy holders or persons pecuniarily interested therein, who shall make affidavit of their belief with specifications of their reasons thereof, that such company is in an unsound condition. Whenever he deems it prudent for the protection of policy holders in this Commonwealth, he shall in like manner, visit and examine or cause to be visited and examined, by some competent person he may appoint for that purpose, any foreign insurance company applying for admission or already admitted to do business by agencies in this Commonwealth. For the purposes aforesaid, the commissioner or his deputy, or person making the examination, shall have free access to all the books and papers of an

insurance company that relate to its business and to the books and papers, kept by any of its agents, and may summon and qualify a witness under oath and examine the directors, officers, agents and trustees of any such company, and other persons, in relation to its affairs, transactions and conditions, and such company shall pay the proper charges incurred in such examination, including the expenses of the commissioner or his deputy, and the expenses and compensation of his assistants employed therein. Whoever without justifiable cause refuses to appear and testify when so required, or obstructs the commissioner in the discharge of his duty, shall for each offense, be punished by a fine not exceeding $1,000, or by imprisonment not exceeding one year; and if the directors, officers or agents of any foreign insurance company shall refuse to appear and testify when so required, the insurance commissioner shall revoke the certificate of authority and license of such company and its agents.''

Section 753:

''If he is of the opinion, upon an examination or other evidence, that a foreign insurance company is in an unsound condition, or if it has failed to comply with the law, or if its officers or agents refuse to submit to examination, or to perform any legal obligation in relation thereto, or if a life insurance company, that its actual funds are less than its liabilities, he shall revoke or suspend all certificates of authority granted to it or its agents, and shall cause notifications thereof to be published in some newspaper of this State having general circulation therein; and no new business shall thereafter be done by it or its agents in this Commonwealth while such default or disability continues, nor until its authority to do business is restored by the Commissioner. If, upon examination, he is of opinion that any domestic insurance company is insolvent, or has exceeded its powers, or has failed to comply with any provision of law, or that its condition is such as to render its further proceedings hazardous to the public, or to its policy holders, he shall revoke or suspend all licenses issued to it or its agents, and cause notice thereof to be published in some paper having general circulation in the State; and it is hereby also made the duty of the commissioner to immediately notify the general agents of the foreign or domestic company suspended, of the suspension, and it shall be the duty of such agents, to

immediately notify persons insured by them of such suspension by the Commissioner, and for failure so to do upon the part of the Commissioner or agent, he shall be fined not less than $50 nor more than $100 for each offense; he shall also apply to the judge of the Franklin Circuit Court, or the judge of the circuit court where the company is located, to issue an injunction restraining it in whole or in part from further proceeding with its business. Such judge may in his discretion issue the injunction forthwith, or upon notice and hearing thereon, and after a full hearing of the matter may dissolve or modify such injunction, or make it perpetual; and may make all orders and decrees needful in the premises and may appoint agents or receivers to take possession of the property and effects of the company, and to settle its affairs, subject to such rules and orders as the court may, from time to time, prescribe according to the course of proceedings in equity: Provided, That if any injunction issued hereunder be dissolved, and the court or judge dissolving the same shall not state in the order or decree of dissolution that there were reasonable grounds for procuring such injunction, the costs of such proceedings shall be taxed and paid out of the funds of the insurance department.''

We think it clear that the right or power to examine an insurance company, conferred upon appellant, as Insurance Commissioner, by the sections, supra, exists and may be exercised: 1. If he believes it to be in an unsound condition. 2. If he believes that it is violating the law. 3. Whenever he deems it prudent for the protection of policy holders so to do.

It should here be said that appellant disclaims any knowledge or belief that any insurance company, whose agent is a member of the appellee board, is in an unsound condition. So, the examination proposed does not rest upon that ground, but is bottomed on the ground that he believes each of the insurance companies represented by an agent or agents, having membership in the appellee association, as well as such agent or agents, is violating the law, and that it is prudent for the protection of policy holders that the examination be made.

The inquisitorial power claimed by appellant may, it seems, be exercised on the grounds indicated, whether the insurance company selected for the examination be a domestic or a foreign company. It is true the statute requires of the Insurance Commissioner the performance

of duties and confers upon him powers with respect to his supervision of domestic insurance companies, that do not apply to foreign insurance companies, and vice versa; but it also requires of him certain other duties and confers upon him certain other powers common to both domestic and foreign insurance companies. For example, section 752 requires the Commissioner, at least once every four years, to examine each domestic insurance company, particularly as to its financial condition, ability to meet its obligations, and whether it has complied with the law. Furthermore, that an examination of any domestic company may also be made by him at any time he shall deem it prudent to do so, or when requested by five or more stockholders or other persons having an interest, who shall make affidavit of their belief, with specifications of their reasons therefor, that such company is in an unsound condition.

It is patent, that as to domestic insurance companies, the Commissioner's inquisitorial power is not restricted by section 752 to the mere ascertainment of whether or not they are in an unsound condition financially, or have violated the law, but is broad enough to authorize him, upon his own initiative, to make the examination whenever he deems it prudent to do so. On the other hand, so much of section 752, as applies to the Commissioner's power of examination with respect to foreign insurance companies, gives him the right to make such examination of them as often as may, in his judgment, be needful for the protection of policy holders in this Commonwealth. Exercise, therefore, of the inquisitorial power thus conferred upon the Commissioner, is not limited to the mere ascertainment by him of the solvency of the foreign company or whether it has or not violated the law, but is comprehensive enough to authorize the investigation for these purposes or others, "whenever he deems it prudent for the protection of policy holders in this Commonwealth," regardless of whether the investigation is required by the stockholders or others. Section 753 gives the Insurance Commissioner authority, after ascertaining the unsoundness of a foreign insurance company, or that it has not complied with the law, or its officers or agents have refused to submit to an examination, to revoke the license of the agents.

We deem it unnecessary to refer to such parts of the sections, supra, and others, as further regulate supervision by the Commissioner of insurance companies do-

ing business in this State, and provide penalties for violations of the insurance laws, consideration thereof not being germane to the matter in hand. But having briefly set forth the inquisitorial powers of the Insurance Commissioner appertaining to his supervision of insurance companies, both domestic and foreign, doing business in this State, we will next consider how this inquisitorial power may be exercised.

Obviously, the answer must be found in the statute. Section 752, following the provisions conferring the power in question and stating the grounds upon which it may be exercised, declares:

"For the purposes aforesaid, the Commissioner or his deputy, or person making the examination (meaning person appointed by the Commissioner), shall have full access to all the books and papers of an insurance company that relate to its business, and to the books and papers kept by any of its agents, and may summon and qualify a witness, under oath, and examine the directors, officers, agents and trustees of any such company, and other persons, in relation to its officers, transactions and conditions; and such companies shall pay the proper charges incurred in such examination, including the expenses of the Commissioner, or his deputy, and the expenses and compensation of his assistants employed therein." * * *

The authority and means here provided the Commissioner for making a searching and thorough examination of the condition and business of an insurance company seem to be comprehensive and complete, yet they are not beyond the power of the Legislature to confer as the State in the exercise of its police power has undertaken to regulate by statute the manner of conducting the business of insurance within its borders, because of its being impressed with a public interest affecting all classes of persons and property.

If the inquisitorial power conferred upon the Insurance Commissioner may be exercised by him in making an examination of the condition and business of a single insurance company, or its agent, for the purpose of ascertaining whether the company or agent has violated the law, or for the protection of the policy holders, why may not such power be exercised, on like grounds, in making an investigation of an association of insurance companies or an association of the agent of such insurance companies?

It is, however, insisted for the appellee association that as the avowed object of the investigation here attempted by appellant is only the ascertainment of whether the complaint of exorbitant insurance rates charged in the city of Louisville and Jefferson County, made by the citizens thereof, is well founded, and it is conceded by him that he is without authority to regulate such rates, the appellee association on that ground, if for no other reason, had the right to refuse to submit to the examination of its books and papers.

This contention ignores the right of appellant to make the examination upon the ground alone that he deems it prudent for the protection of policy holders, and if it should enable him to discover that the association is violating the law in the matter of preventing free competition in the insurance business, notwithstanding his want of authority to regulate rates, he could not better protect the policy holders and the public generally, than to report the fact to the Attorney General for such action as he might deem proper, or to the Governor or General Assembly, for such legislation as would correct the evil.

As said in the case of Complainant v. Hale, 219 U. S., 307, with respect to the right of the State to regulate insurance companies:

"We can well understand that fire insurance companies, acting together, may have owners of property practically at their mercy in the matter of rates, and may have it in their power to deprive the public generally of the advantages flowing from competition between rival organizations engaged in the business of fire insurance. In order to meet the evils of such combinations or associations, the State is competent to adopt appropriate regulations that will tend to substitute competition in the place of combination or monopoly."

In view of the principle here announced, it would seem clear that the appellee, Louisville Board of Fire Underwriters, although it may not, as it contends, be subject to indictment for carrying out the purposes of its organization (question we do not here decide), if it is certainly restraining or preventing free competition, for the purpose of ascertaining which the contemplated investigation by appellant is demanded, it is acting against public policy, and, therefore, in violation of the law.

Let us now see what there is, if anything, in the

status of the appellee association, that would exempt it from the investigation demanded. It appears from its constitution, by-laws and rules, which appear in the record and are made part of the agreed statement of facts, that, "Its object shall be the promotion of harmony and correct practices in the business of fire and tornado underwriting; the establishment and maintenance of fair rates of fire and tornado insurance; the regulation and employment of solicitors as to their number and conditions, the adoption of such rules and regulations and their enforcement by the imposition of fines, penalties, and expulsion for violation as the best interest of fire and tornado underwriting may seem to require; and to any and all things as in their judgment may redound to the improvement and elevation of the business of fire and tornado insurance. It shall have jurisdiction over all fire and tornado business of insurance taken by its members, and prescribe a uniform manner of conducting said business."

Article 7 of the Constitution is as follows:

"Expenses incurred by this board shall be provided for by an assessment on each company represented, according to its premium receipts on business written by members on any property in Jefferson County. Reports made by members of premium receipts shall contain in one column, reports on the business done in Jefferson County only; in another, the amount of the entire business written through the office for each company. Premiums on risks reinsured to be deducted, provided reinsurance is written and reported by some other member of the board. No deduction shall be made for re-insurance in companies that do not report the premium received from such deducted re-insurance to this board for assessment."

Article 14 of the Constitution is as follows:

"The members of this board agree that they will not pay or promise any commissions or other valuable considerations, directly or indirectly, to any resident corporation, firm or person not a member of this board; they also agree that they will not receive business from any company, person, or firm engaged in insurance business who is a resident of the city of Louisville, who is not a member of this board; nor place business with any such person or firm unless they shall first obtain from the secretary the permit in writing to do so."

It appears that the appellee association is, with the

exception of two or three domestic companies, composed of the agents of foreign insurance companies. From the excerpts quoted above it will be observed that the appellee association has attempted to give itself the power to arbitrarily fix rates and jurisdiction over all fire and tornado business done by its members; also, that although ostensibly organized, maintained and conducted by the various agents, in their individual capacities, composing its membership, the association is, in fact, a part of the machinery employed by the insurance companies, whose agents compose its membership, for conducting their business in the city of Louisville and Jefferson County. While each agent, upon becoming a member of the association, must pay an initiation fee of $500 and this fund is kept separate from what is collected directly from the companies, and is used purely as the personal property of the various agents, it will be seen that the expenses incurred by the association in conducting its business, are paid by the companies represented through their agents in the association. So, every record kept by the association has been paid for by the insurance companies represented as a part of the machinery for the conduct of their business.

Various by-laws and rules of the appellee association, with reference to the conduct of its business, make it manifest that it is not only its purpose and business to arbitrarily fix the rates to be charged for insurance in Louisville and Jefferson County, but also to allow the exercise upon the part of its board of the power to suppress competition, whether such power has been so used or not.

In view of the fact that the expenses of the business conducted by the appellee association is paid by the insurance companies represented by its members; that the records and papers which appellant has demanded the right to examine, were compiled for the benefit of the insurance companies and paid for by them; that such records and papers are used in conducting their business, and contain a record of the business transacted by them, such records and papers are not to be regarded as the private property of the individual agents, but are the property of the association, and in a sense of the insurance companies whose business is conducted through agents composing the association. This being true, every requirement of the law that would compel an insurance company to submit its books and papers to an

examination at the hands of the insurance commissioner will apply to compel the appellee association, representing an aggregation of insurance companies in conducting their business, to submit its books and papers to him for examination.

We, therefore, conclude that the Insurance Commissioner had a right to make the examination of the appellee's books and papers demanded by him, and that it was the duty of appellee to submit them to such examination.

For the reasons indicated, the judgment is reversed and cause remanded, with direction to the lower court to enter such judgment as will conform to the opinion.

Whole court sitting.