## Browning v. Louisville & Nashville Railroad Company.

(Decided March 5, 1926.)

### Appeal from Whitley Circuit Court.

1. Carriers—Carrier by Railroad Held Under no Duty to Permit Coal Dealer to Construct Coal Bin on its Right of Way for Assembling and Shipping of Coal (Ky. Stats., Section 783).—Ky. Stats., section 783, requiring common carriers to furnish freight and passenger transportation at places which it equips and maintains for such purpose, does not require carriers to permit coal dealer to construct coal bin on its right of way for assembling and shipping coal, nor is carrier under such obligation at common law.

2. Carriers—Refusal by Railroad to Permit Coal Dealer to Construct Coal Bin Along Side Track, which had Been Given to Others Does Not Constitute Discrimination, which Applies Only to Discharge of "Carrier Service" Duties.—Refusal by railroad to permit coal dealer to construct coal bin on right of way at point along its side track, which service carrier had given to others, does not constitute discrimination, which applies to discharge of "carrier service" duties and not to strictly private ones that railroad company has option to perform as it sees proper.

STEPHENS & STEELY for appellant.

TYE & SILER, ASHBY M. WARREN and WOODWARD, WARFIELD & HOBSON for appellee.

Opinion of the Court by Judge Thomas—Affirming.

There is a small flag station in Whitley county on the line of the railroad track of the appellee and defendant below, Louisville & Nashville Railroad Company, called Brummett, and at which there is also a side track which defendant claims was constructed for its benefit in maintaining its track and upon which it loaded cars with gravel to ballast its track. The appellant and plaintiff below, Joe Browning, filed this action in the Whitley circuit court against defendant, alleging in the first paragraph of the petition that defendant gave him permission to construct on its right of way, and along the side track at Brummett, a coal bin into which he might assemble coal until he got a sufficient quantity to load a car; that he procured lumber for the purpose at a cost of $109.00, but before he commenced the construction of the bin defendant withdrew its permission and because thereof he was entitled to recover of it the full value of the lumber, although he does not allege that it was worthless for any other purpose, or that he could not dispose of it for any price. In the second paragraph of his petition he alleges that defendant refused to permit him to construct a bin on its right of way suitable for the purpose of assembling coal and that he was thereby deprived during the months of August, September, October and November, 1920, of mining or shipping coal, and that if he had been permitted to do so he would have shipped enough coal to have made a profit of $1,000.00, and he sought judgment against defendant for those two items. The court sustained a motion to require plaintiff to elect which of the two inconsistent causes of action he would prosecute. No objection was made to that motion at the time, nor did plaintiff except when the court thereafter sustained it. He elected to prosecute the cause of action stated in the second paragraph of his petition. Thereafter he amended it by averring that defendant had theretofore given the same permission requested by him to others and by its refusal to him was guilty of discrimination, and was thereby liable to him under the paragraph as amended for a violation of its common law duties as a common carrier. A demurrer filed to that paragraph as amended was sustained and plaintiff declining to plead further his petition was dismissed, to reverse which he prosecutes this appeal.

Plaintiff chiefly relies as grounds for his supposed cause of action upon section 783 of our statutes saying: "Every company shall furnish sufficient accommodation for the transportation of all such passengers and property as shall, within a reasonable time previous thereto, offer, or be offered, for transportation, at places established by the corporation for receiving and discharging passengers and freight, and shall, when requested, check every parcel of baggage taken for transportation, if there is a handle, loop or fixture, so that same can be attached, and shall give to the person delivering such baggage a check for the same." It is furthermore contended that, independently of the statute, it was the common law duty of defendant as a common carrier to grant the permission plaintiff requested, and which will be referred to later.

Manifestly, the section of the statute relied on has no application to a case like this. It clearly refers to the furnishing of equipment and accommodations for the transportation of freight and passengers at places which it equips and maintains for that purpose and was never intended to require common carriers by railroad to furnish such accommodation as therein referred to at any and all points along its line that a prospective patron might select. When it establishes a station for the reception of passengers and freight it thereby becomes its duty to comply with the requirements of that section, even to the furnishing of sufficient cars, but no case that we have been able to find or to which we have been referred extends the application of the statute further than that. The question of its duty in distributing its depots and stations for the purpose of receiving freight and passengers along its line for the purpose of meeting the convenience of travelers and shippers is not involved in this case, since it is reduced to the simple proposition, whether the defendant as a common carrier is compelled at the behest of anyone along its line to either furnish shipping facilities, or permit its right of way to be used by the shipper for that purpose at any and every point along its line, although it may, forsooth, have previously constructed a side track at that point? That it is under no such obligation either by statute or at common law we are thoroughly convinced; and we are equally convinced that if the statute had gone to the extent of creating the duty here insisted on it would be unconstitutional and

void, because it would be taking of property for private use without due process of law.

The exact question was before the Supreme Court of the United States in the case of Missouri Pacific Railroad Company v. Nebraska, 164 U. S. 403. Briefly stated, the facts in that case were, that the railroad company had permitted two private enterprises to erect as many grain elevators on its right of way at its station of Elmwood. A third party applied to it for the same privilege with the intention of constructing a private elevator on the right of way. The railroad company declined to give it, and application was made to the Board of Transportation of the state (corresponding to our Board of Railroad Commissioners) and it determined, under a construction of a statute of that state, that it was the duty of the railroad company to give the applicant the privilege. The question was carried to the Supreme Court of the state and it upheld the findings and judgment of the Board of Transportation. An appeal was prosecuted therefrom by the railroad company to the Supreme Court of the United States. After reciting that the interest sought to be required was not for any public use but solely for private use, the opinion of that court reversed the judgment of the state court and in doing so said: "To require the railroad company to grant to the petitioners a location on its right of way, for the erection of an elevator for the specified purpose of storing from time to time the grain of the petitioners and of neighboring farmers, is to compel the railroad company, against its will, to transfer an estate in part of the land which it owns and holds, under its charter, as its private property and for a public use, to an association of private individuals, for the purpose of erecting and maintaining a building thereon for storing grain for their own benefit, without reserving any control of the use of such land, or of the building to be erected thereon, to the railroad company for the accommodation of its own business, or for the convenience of the public.

"This court, confining itself to what is necessary for the decision of the case before it, is unanimously of opinion that the order in question, so far as it required the railroad corporation to surrender a part of its land to the petitioners for the purpose of building and maintaining their elevator upon it, was, in essence and effect, a taking of private property of the railroad corporation for the private use of the petitioners. The taking by a

state of the private property of one person or corporation without the owner's consent, for the private use of another, is not due process of law and is a violation of the Fourteenth Article of Amendment of the Constitution of the United States.   Wilkinson v. Leland, 2 Pet. 627, 658; Murray v. Hoboken Co., 18 How. 272, 276; Loan Association v. Topeka, 20 Wall. 655; Davidson v. New Orleans, 96 U. S. 97, 102; Cole v. LaGrange, 113 U. S. 1; Fallbrook District v. Bradley, ante, 112, 158, 161; State v. Chicago, Milwaukee & St. Paul Railway, 36 Minnesota 402.''

The subject is also discussed in the text of 4 R. C. L. page 680, par. 155, wherein it is pointed out that it is no part of the duty of a common carrier to furnish the character of service here involved, since it does not come within what is commonly termed ''carrier service'' with all of its duties and obligations.

The direct question does not appear to have been heretofore before this court (except in the case of L. & N. R. Co. v. Estes, 203 Ky. 93, where it was not determined), but an analogous one was presented in the case of Greenwich Insurance Company v. L. & N. Railroad Company, 112 Ky. 598.  In that case the railroad company had given the privilege for private purposes to erect a storage house on its right of way.  In the lease contract whereby the privilege was given it was stipulated that the company would not be responsible for any damage done to the building ''On account of any injury or loss whatever to said house or its contents, by reason of fire from locomotives or from any cause whatsoever.''  The building was later destroyed by fire, and the owner collected his insurance thereon from the appellant in that case, and it, under the terms of its policy, sought to be subrogated to the rights of the insured (the lessee) and brought the action against the carrier for the destruction of the building on the ground that the fire that destroyed it was the result of defendant's negligence.  The latter relied for its defense on the exempting clause contained in the lease contract.  Plaintiff, the insurance company, attempted to avoid that stipulation by relying on section 196 of our Constitution, saying in part: ''No common carrier shall be permitted to contract for relief from its common law liabilities.''  This court, however, refused to apply that section of the constitution to the facts as presented, and in doing so said: ''The company is under

no obligation as a common carrier to the public or any member of the public to permit them to erect on its right of way any sort of structure, and if one should erect such building on the company's right of way the company would owe no duty to its owner, save to refrain from willfully or wantonly destroying it." The court then proceeded to discuss the extent as well as the limitations of the duties of common carriers as such, as well as the reasons therefor, and finally concluded that the contract there involved did not pertain to a matter included in "carrier service," but was only a private contract made at arm's length between individuals for their mutual private benefit, and that being so, it was competent to insert the stipulation relied on in defense of the action, the opinion saying: "Therefore the parties, when they come to contract with reference to the location of such a building, are dealing at arm's length, and upon an equal footing." That being true the defendant had the right to decline altogether to permit the building to be constructed upon its right of way for such a purpose, and having such right it necessarily follows that when it saw proper to extend it there was nothing to prevent it from limiting or qualifying the right as it saw proper. See also the case of J. P. Gorman Coal Co. v. L. & N. R. R. Co., — Ky. —, and the text in 10 C. J. 479, paragraph 759.

The theory of learned counsel for plaintiff is, and he so states in his brief, that the railroad "Is constructed through the farms for the purpose of furnishing outlet to markets, and the farmer who resides on the track has a right to have his goods carried from his farm to the market." Which is a proposition that if literally applied would altogether destroy the service performed by common carriers, and would render such agencies of no practical use or benefit to the country, to say nothing about the "undue process" question heretofore referred to. If plaintiff's theory be correct, then persons through or by whose land the railroad track runs would have the right not only to construct, or compel the railroad to construct, and maintain facilities on its right of way to receive shipments of all sorts of produce at any and every point selected by the shipper, but the same line of reasoning would also compel the carrier to stop its passenger trains at any and all such selected points to enable one to board or depart from any passenger train running over the line. Furthermore, if contiguous landowners possessed such privilege it would be a dis-

crimination to deny it to others living farther away from the railroad track, and it requires no stretch of the imagination to demonstrate that the imposition of such duties would render carrier service so impractical as to utterly destroy its usefulness.

What we have said is also an answer to the alleged discrimination urged in the amendment to the second paragraph of the petition, since that term is applied to the discharge of "carrier service" duties, and not to strictly private ones that the railroad company has a right to either perform or not perform as it sees proper.

The judgment of the trial court being in accord with the views herein expressed, it is affirmed.