## BLACK & WHITE TAXICAB & TRANSFER CO. v. BROWN & YELLOW TAXICAB & TRANSFER CO.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1926.)

No. 4703.

**1. Courts ⬡316.**

Dissolving Kentucky corporation and reincorporating in Tennessee, for purpose of suing in federal court on contract void under Kentucky law, *held* not "collusion," within Judicial Code, § 37 (Comp. St. § 1019).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Collusion.]

**2. Courts ⬡316.**

Preference that litigation be had in federal courts, instead of in state court, is not wrongful, as long as no improper action is done by which jurisdiction attaches.

**3. Courts ⬡316.**

Reincorporating Kentucky corporation in Tennessee, for purpose of suing in federal court on contract void under Kentucky law, *held* not fictitious, in absence of showing corporation was not intended to be permanent.

**4. Corporations ⟨⟩1.**

A corporation is none the less real because of the motive which occasioned it.

**5. Appeal and error ⟨⟩1012(1).**

Trial court finding that reincorporation of Kentucky corporation in Tennessee was for purpose of having litigation tried in federal court must be accepted, unless evidence preponderates against it.

**6. Carriers ⟨⟩14.**

Under Kentucky law, railroad company cannot grant to one person, to exclusion of all others, right to come on depot grounds with vehicles for receiving freight and passengers.

**7. Carriers ⟨⟩14.**

Under federal law, railroad may make reasonable arrangements, including granting of special privileges, to single concerns to supply passengers arriving at terminals with hacks and cabs.

**8. Courts ⟨⟩366(1).**

State court decisions construing Constitution and statutes are binding on federal courts, unless conflicting with federal Constitution or statutes.

**9. Courts ⟨⟩372(1).**

Federal courts, when dealing with rules of general or commercial law, will exercise own judgment.

**10. Courts ⟨⟩372(4).**

Ky. St. § 818, and Const. Ky. § 214, not being applicable to grant by railroad of exclusive right to solicit handling of baggage and passengers, federal court, in determining validity of contract, will treat question as one of general law.

**11. Carriers ⟨⟩18(6).**

Where railroad company had granted taxicab company exclusive right to transport passengers' baggage, competitive company was properly enjoined from going within depot or on grounds for soliciting business.

**12. Automobiles ⟨⟩58.**

Taxicab company has right within reasonable limit to use street in properly prosecuting its calling, so long as such use does not obstruct others in legitimately using it on equal terms.

Appeal from the District Court of the United States for the Western District of Kentucky; Charles I. Dawson, Judge.

Action by the Brown & Yellow Taxicab & Transfer Company against the Black & White Taxicab & Transfer Company and another. Decree for plaintiff, and defendant named appeals. Affirmed.

N. P. Sims, of Bowling Green, Ky. (Guy H. Herdman, of Bowling Green, Ky., on the brief), for appellant.

M. M. Logan, of Bowling Green, Ky. (Thomas, Thomas & Logan, of Bowling Green, Ky., on the brief), for appellee.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. The appellee is a corporation organized under the laws of Tennessee, with authority[1]—not only in that state, but in other states—to carry on the business of operating for hire taxicabs, trucks, and other vehicles for transporting passengers, baggage, freight, etc. It was carrying on a general transfer business at Bowling Green, Ky. December 1, 1925, it made written agreement with the Louisville & Nashville Railroad Company, a Kentucky corporation, whereby, on sufficient consideration, it was given for a term of five years (with certain renewal rights and subject to certain conditions and limitations) "the exclusive right and privilege, in so far as it [the railroad company] can legally do so, to solicit the handling or hauling of baggage and passengers on the trains of the railroad company and in and around the railroad company's passenger depot and on the surrounding premises, with privilege to have an agent go into the waiting rooms or upon the platform of the depot to take orders for the conveyance of passengers on inbound trains," with an assignment of a designated plot of ground adjoining the railway platform for the use of appellee to park its taxicabs while awaiting the arrival of trains. While a like plot at the opposite end of the station was reserved for private vehicles, "not including public taxicabs of outside parties," appellee was given the right, when necessary, to use such space as is not occupied by private motor cars; the railroad company reserving the right to change the location of such parking space from time to time, as it might deem necessary or advisable.

Appellant refusing to recognize the validity of such exclusive contract, and accordingly violating the same, and the railroad company, while not consenting to or permitting such violation, not having prevented appellant therefrom, appellee filed its bill in equity herein for the enforcement of the contract. Admittedly the plaintiff company (appellee) was originally a Kentucky corporation; the incorporators and stockholders being three brothers and their wives. About September 24, 1925 (the precise date is not material), the Kentucky corporation was dissolved, and plaintiff corporation formed un-

[1] As stated under oath in the bill, and not denied, but impliedly assumed, throughout the case.

der the same name, the incorporators being the same as in the Kentucky corporation. The properties of the Kentucky corporation were turned over to the Tennessee corporation; otherwise, no cash or real estate was paid for the stock in the latter, as the articles of incorporation required. The plaintiff corporation has no property in Tennessee, and transacts no business there. Its designated office is in the residence of a brother, at a stated location in Nashville, Tenn., but plaintiff corporation keeps no books there, nor has it there any offices for business.[2]

It is conceded that plaintiff corporation dissolved its Kentucky corporation and reincorporated in Tennessee "for protection in this controversy or any controversy that may arise out of this or any contracts." The railroad company was made codefendant with the appellant taxicab company, which denied plaintiff's right to maintain its bill and moved to dismiss the same for the reasons—so far as now important—(1) that under the settled law of Kentucky the contract sued on was contrary to public policy, unauthorized by the railway company's charter, monopolistic, null, and void; (2) that the contract is in violation of section 214 of the Kentucky Constitution and section 818 of the Kentucky Statutes; (3) that plaintiff's action in dissolving the Kentucky corporation while having a similar contract with the railway company, and in attempting reincorporation under the same name in Tennessee, for the purpose of bringing this action in the court below, and evading the settled law of Kentucky governing the contract sued on, was a collusion and fraud on this court for which plaintiff's bill should be dismissed under section 37 of the Judicial Code (Comp. St. § 1019).

The District Court held that plaintiff was guilty of no fraud on the jurisdiction of the court, and that the contract was valid and enforceable. Relief was decreed accordingly.

[1, 2] 1. The suit was not collusive within the Code section in question. The motives which induced the plaintiff company to incorporate under the Tennessee statute can have no influence on its validity. Upon the subject of collusion generally the rule is well settled that where, as here, the proposed suit involves a substantial controversy, the fact that plaintiff and the railway company preferred that litigation be had in the federal courts, instead of in the courts of the state, is not wrongful.

[2] We do not understand that the facts stated in this paragraph affect the legality of the Tennessee incorporation, except as they might be thought to bear upon the question whether it was real or fictitious.

"So long as no improper act was done by which the jurisdiction of the federal court attached, the motive for bringing the suit there is unimportant." In re Metropolitan Ry. Receivership, 208 U. S. 90, 111, 28 S. Ct. 219, 225 (52 L. Ed. 403) and cases cited on the latter page; Lehigh Mining, etc., Co. v. Kelly, 160 U. S. 327, 332, 333, 16 S. Ct. 307, 40 L. Ed. 444. In the Metropolitan Case the defendant not only admitted the averments of the bill, but joined in the request for the appointment of receivers. It was not necessary to the jurisdiction "that the defendant should controvert or dispute the claim. It is sufficient that he does not satisfy it." In re Metropolitan Ry. Receivership, supra, at page 108 (28 S. Ct. 223). Equally with or without the presence of the railroad company as defendant, and whether or not it was a necessary party, the court below had jurisdiction on account of diverse citizenship, as both defendants were citizens of Kentucky.

[3, 4] The ultimately decisive question is merely whether the Tennessee incorporation is real or fictitious, having in mind that the incorporation is none the less real because of the motive which occasioned it. McDonald v. Smalley, 1 Pet. 620, 624, 7 L. Ed. 287; Smith v. Kernochen, 7 How. 198, 216, 12 L. Ed. 666; Barney v. Baltimore, 6 Wall. 280, 288, 18 L. Ed. 825; Lehigh Mining, etc., Co., supra. The last-cited case, while relied upon by appellant, contains nothing inconsistent with the proposition herein stated, as applied to the instant case. There the stockholders of a Virginia corporation organized themselves into a corporation under the laws of Pennsylvania, the Virginia corporation conveying its lands in question to the Pennsylvania corporation, which brought in the federal court a suit in ejectment for the land. *The Virginia corporation,* however, *was not dissolved.* Both corporations still existed.[3]

In the case here, on the contrary, the title had actually passed from the Kentucky corporation to the Tennessee corporation. The former had been actually dissolved and its ex-

[3] The court said (page 342 [16 S. Ct. 313]): "The Pennsylvania corporation neither paid nor assumed to pay anything for the property in dispute, and was invested with the technical legal title for the purpose only of bringing a suit in the federal court. As we have said, that corporation may be *required* by those who are stockholders of its grantor, and who are also its own stockholders, at any time, and *without receiving therefor any consideration whatever,* to place the title where it was when the plan was formed to wrest the judicial determination of the present controversy from the courts of the state in which the land lies."

istence terminated. The latter became the sole owner of the right of action. Its Tennessee citizenship was complete and unassailable. The federal court thus could not be imposed upon with respect to either citizenship or subject-matter of litigation. There was no other corporation clothed with power to compel conveyance by the Tennessee corporation. It seems too plain for argument that the practical wiping out of the stock in the Kentucky corporation was a sufficient consideration for the receipt of the stock in the Tennessee corporation.

Nor is there anything in Miller & Lux v. East Side Canal Co., 211 U. S. 293, 29 S. Ct. 111, 53 L. Ed. 189, opposed to the conclusion above stated. There a California corporation transferred its property to a corporation organized by it and its stockholders under the laws of Nevada. The Nevada corporation brought suit in the federal court, asking substantially the same relief as sought in a pending suit brought by the California corporation in a state court, the latter case not having been decided when the suit in the federal court was brought.[4] It may be noted that in the Miller & Lux Case (page 304 [29 S. Ct. 114]) it was expressly said: "If before the institution of this suit the California corporation had distributed among those entitled to it the stock of the Nevada corporation, issued to it as fully paid up stock, and had then ceased to exist or been dissolved, a different question might have been presented. But such is not this case." And see the Lehigh Case, supra, at page 336 (16 S. Ct. 307)—middle paragraph.

We find in the record of the instant case no tangible evidence that the Tennessee cor-

poration was not intended to be permanent. Not only was the Kentucky corporation actually dissolved and the Kentucky citizenship given up, but presumably the Tennessee incorporation would thereafter be as convenient and desirable as an incorporation in Kentucky.

In Morris v. Gilmer, 129 U. S. 315, 328, 329, 9 S. Ct. 289, 293 (32 L. Ed. 690), where a suit in the federal court was dismissed for bad faith on the part of the individual plaintiff in attempting to acquire a Tennessee residence, the court *affirmatively* found that "his sole object in removing to that state [Tennessee] was to place himself in a situation to invoke the jurisdiction of a Circuit Court of the United States. He went to Tennessee without any present intention to remain there permanently or for an indefinite time, but with the present intention to return to Alabama as soon as he could do so without defeating the jurisdiction of the federal court to determine his new suit. He was therefore a mere sojourner in the former state when this suit was brought. He returned to Alabama almost immediately after giving his deposition."

[5] The record in the instant case supports no such conclusion. Mr. Clark, one of the incorporators, called as a witness by defendant, testified that "the Kentucky corporation was dissolved as the law required, and that his company was conducting its business as a Tennessee corporation, and proposed to continue to do so." This affirmative testimony was given in reply to a question by the trial judge, who presumably had in mind the question of intention to create a permanent legal residence. The judge formally found as a fact that "the plaintiff was guilty of no fraud on the jurisdiction of the court by reason of its having reincorporated in the state of Tennessee as a Tennessee corporation, for the purpose of having its litigation in Kentucky tried in the federal court." This finding of fact must be accepted, unless the evidence decidedly preponderates against it. In re Snodgrass (C. C. A. 6) 209 F. 325, 326, 126 C. C. A. 251; Carey v. Donohue, 209 F. 328, 333, 126 C. C. A. 254. There is here no such preponderance. Neither the fact that plaintiff had no other property in Tennessee and transacted no regular business therein, nor any other of the considerations relied on by appellant, are sufficient to support a conclusion that the Tennessee corporation was merely fictitious.

[6] 2. It is the well-established rule in the courts of Kentucky that a railroad company cannot grant to one person—a common car-

---

[4] As said by the Supreme Court (page 300 [29 S. Ct. 113]): "The California corporation had not been dissolved, nor had it ceased to exist when the present suit was brought by the Nevada corporation. It was then in existence, with all of its powers unmodified. And it does not appear that any steps had or have been taken to disincorporate the California corporation. Nor can it be said when, if ever, that corporation will be dissolved." And again (page 306 [29 S. Ct. 115]): "As the California corporation could have controlled the conduct of the suit brought by the Nevada corporation at any time after it was brought, and up to the date of the decree below, and could have required the Nevada corporation, in the event of a decree in its favor, to transfer the benefit of such decree to the California corporation, without any new or valuable consideration, we hold that the suit was properly dismissed under the fifth section of the act of 1875 [now Judicial Code, § 37] as one in which the Nevada corporation was organized and collusively made plaintiff in the suit in the federal court simply for the purpose of creating a case cognizable by that court."

rier—to the exclusion of all other persons engaged in a like business, the right to come upon its depot grounds with his vehicles for the purpose of receiving freight and passengers. McConnell v. Pedigo, 92 Ky. 465, 18 S. W. 15; Palmer Transfer Co. v. Anderson, 131 Ky. 217, 115 S. W. 182, 19 L. R. A. (N. S.) 756, 133 Am. St. Rep. 237; Commonwealth v. Louisville Transfer Co., 181 Ky. 305, 204 S. W. 92.

[7] In the courts of the United States, however, the rule is equally well settled that, when not unnecessary, unreasonable, or arbitrary, a railroad may make arrangements, including the granting of special privileges to a single concern, to supply passengers arriving at its terminals with hacks and cabs, and it is not bound, at least in the absence of valid state legislation requiring it to do so, to accord similar privileges to other persons, even though they be licensed hackmen. Such exclusive arrangement is not a monopoly in the odious sense of the word, nor does it involve an improper use by a railroad company of its property. Donovan v. Pennsylvania Co., 199 U. S. 279, 295 et seq., 26 S. Ct. 91, 50 L. Ed. 192. The view above stated is declared (page 299 [26 S. Ct. 96]) in the opinion of the court "the better view—the one sustained by the clear weight of authority and by sound reason and public policy." In the contract in suit, so far as sustained by the District Court, we find nothing unreasonable or arbitrary.

[8, 9] It is also the settled rule that, while the decisions of the state courts in construing the Constitution and statutes of the state, or in passing upon questions of purely local usage, are binding upon the federal courts, unless they conflict with the federal Constitution or a federal statute, or are dealing with rules of general or commercial law, yet, when the question is one of general or commercial law, the federal courts, while treating the decisions of the state courts with attention and respect, and (as has been said) with an inclination to follow them so far as persuasive, will nevertheless ultimately exercise their own independent judgment in deciding the cause. This proposition is elementary.

[10] In none of the Kentucky decisions which have been called to our attention have the courts of that state assumed to be considering the statutes or constitution of Kentucky. Section 818 of the Kentucky Statutes, so far as it seems even plausibly applicable, is printed in the margin.[5] This

statute plainly has no application to the controversy here. Section 214 of the Kentucky Constitution is likewise printed in the margin.[6] There seems no persuasive reason for construing this section as applicable to the case before us. The last clause—"or for the conduct of any business as a common carrier" —is the only feature calling for consideration. But not only does the compiler's reference, "See sections 817–819, Ky. Stat.," in connection with similar marginal references, at sections 817 to 819, to section 214 of the Constitution and its adjoining sections, suggest the compiler's understanding thereof as relating to services as a common carrier with respect to transportation of passengers or freight; but we think it plain that the section was meant to be so limited. The only reference by the Court of Appeals of Kentucky, to which we are cited by way of construction of section 214, is contained in Louisville & N. R. Co. v. Stockyards Co., 133 Ky. 148, 97 S. W. 778, involving a contract for the delivery to the Bourbon Stockyards "of all live stock, etc., consigned to the city of Louisville." This was quite naturally construed as a preferential contract, in direct violation of sections 213 and 214. The history of the adoption of both these sections (pages 156–159) seems to indicate a construction of section 214 as limited as we have above suggested. Cf. Browning v. L. & N. Ry. Co., 281 S. W. 490. We think that under the rule of "noscitur a sociis" the section would naturally be construed as so limited.

In McConnell v. Pedigo, supra, it was said (pages 471, 472) that there resulted from the monopoly there found an inconvenience to the passenger and the public "that the company has no power to create, either by the provisions of its charter or for the reason that it is the owner of the property on which the depot stands." From this statement, especially when considered in connection with Louisville, etc., Co. v. Commonwealth, 146 Ky. 847, 143 S. W. 412, 38 L. R. A. (N. S.) 830, and with the statement in the

---

[5] "It shall be unlawful for any corporation to make or give any undue or unreasonable preference or advantage to any particular person or locality, or any particular description of traffic,

15 F.(2d)—33

in any respect whatever, in the transportation of a like kind of traffic; or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage."

[6] "No railway, transfer, belt line or railway bridge company shall make any exclusive or preferential contract or arrangement with any individual, association or corporation, for the receipt, transfer, delivery, transportation, handling, care or custody of any freight, or for the conduct of any business as a common carrier."

Pedigo Case (page 468, 18 S. W.), that the plaintiff is not operating under the charter of any transfer company that gives him any peculiar privileges by reason of the public services he undertakes, we do not understand that the conclusion of monopolistic control was based upon a violation of any provision of the company's charter. It seems rather to declare in effect, that the question was one of general law, unaffected by charter.

[11] It follows that, in determining the validity of the contract here in question, we must follow the federal precedents, and that, as respects the injunctive provision against appellant quoted in the margin hereof, the action below was correct.[7] The railroad company has not appealed from the decree against it. This relief, including the provision against parking cars *on the grounds of the railroad company,* is directly within the decision of the Donovan Case, supra.

3. Burnam's alley and Curd street apparently intersect at the corner of the railroad depot. The decree below enjoins appellant "from using Curd street, * * * leading from the northwest side of the line of Birnam's alley extended across Curd to Kentucky street, in such a manner *as to unreasonably obstruct ingress and egress* to and from the depot grounds or *to unreasonably obstruct ingress and egress* of plaintiff's taxicabs or other vehicles from the parking place allotted to the plaintiff by the terms of said contract, *or the ingress and egress* of plaintiff's taxicabs and vehicles from Curd street to the depot or to the streets and grounds adjacent thereto. Otherwise the motion for an injunction against the defendants concerning the exclusive rights of plaintiff to park its cars on Curd street is denied."

[12] The railroad company has no exclusive right to the control of the public streets, and appellant had the right, *within reasonable*

limits, to use such public street, while existing as such, in properly prosecuting its calling, so long as such use does not obstruct others in legitimately using it upon equal terms. Donovan v. Pennsylvania Co., supra, at pages 303, 305 (26 S. Ct. 91).

It appears that, previous to the decree of the District Court herein, by court action and city ordinance, Curd street, to the extent stated in the margin hereof, was closed.[8] It is not entirely clear whether the part of Curd street covered by the injunction is still a public street; but we think that question not of controlling importance on this record. If, as appellant contends, the right of way of the closed street belongs to the city, and, unless the latter is acquiescing in its continued use by the railroad and the public, it is not open to appellant to invoke the city's rights. If, however, the way is still a public highway, legally or de facto, appellant has no right to use it so as to "unreasonably obstruct ingress and egress" in either of the three respects involved in the injunction. Donovan v. Pennsylvania Co., supra, at pages 301, 305 (26 S. Ct. 91). And this is the only control the decree attempts. There is substantial evidence in the record that defendant had unreasonably obstructed ingress and egress in the respects enjoined.

The decree of the District Court is accordingly affirmed.

---

[7] The appellant and its agents and employees were permanently enjoined from "going within the depot of the defendant * * * railroad company * * * or upon the grounds and property of the * * * railroad company adjacent to said depot for the purpose of soliciting business in opposition to the plaintiff herein, and * * * from parking its taxicabs or other vehicles of conveyance on the grounds of the defendant railroad company adjacent to said depot, except, however, that the defendant taxicab company may go upon the grounds of the said railroad company to receive passengers or baggage as to which it has made prior contracts, but in so doing it shall not park its cars on the grounds of the railroad company or remain within the said depot longer than is reasonably necessary to discharge said passengers or baggage, or to receive passengers or baggage as aforesaid."

[8] The description of the closed portion is this: "Curd street from the southeastern edge of the right of way of the Louisville & Nashville Railroad Company to the northwestern boundary of Burnam's alley, and Adams street from the northern line of Sophia G. Winlock's property north to where it terminates in the Louisville & Nashville Railroad Company's right of way."