## MILLER & LUX, INCORPORATED, v. EAST SIDE CANAL & IRRIGATION COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 518.   Submitted October 13, 1908.—Decided December 7, 1908.

While jurisdiction of the Circuit Court exists even if complainant's motive in acquiring citizenship was to invoke that jurisdiction, the citizenship must be real and actually acquired with the purpose of establishing a permanent domicil. *Morris* v. *Gilmer,* 129 U. S. 315.

Where the complainant corporation was organized for the sole purpose of invoking the jurisdiction of the Circuit Court, and any decree in its favor would be really under the control, and for the benefit, of another corporation of the same State as defendant, the suit should be dismissed as one in which the complainant was collusively

so organized for the purpose of creating a case cognizable in the Circuit Court within the meaning of § 5 of the act of March 3, 1875, c. 137, 18 Stat. 470, 472. *Lehigh Mining & Manufacturing Co.* v. *Kelly*, 160 U. S. 327.

THE facts are stated in the opinion.

*Mr. Edward F. Treadwell* for appellant:

The mere fact (if it be a fact) that complainant was formed and this property transferred to it for the purpose of conferring jurisdiction upon the Federal courts, can in no way affect the jurisdiction of those courts. *Dickerman* v. *Northern Trust Co.*, 176 U. S. 181, 191; *McDonald* v. *Smalley*, 1 Pet. 620; *Smith* v. *Kernochen*, 7 How. 198, 216; *Barney* v. *Baltimore*, 6 Wall. 280; *Morris* v. *Gilmer*, 129 U. S. 315, 328; *Cross* v. *Allen*, 141 U. S. 528, 533; *Crawford* v. *Neal*, 144 U. S. 585; *Lake County Commissioners* v. *Dudley*, 173 U. S. 243, 254; *South Dakota* v. *North Carolina*, 192 U. S. 286, 310; *Blair* v. *Chicago*, 201 U. S. 400, 448; *Briggs* v. *French*, Fed. Cas. No. 1,871; *Case* v. *Clarke*, Fed. Cas. No. 2,490; *Van Dolsen* v. *New York*, 17 Fed. Rep. 817; *Neal* v. *Foster*, 36 Fed. Rep. 29, 41; *Ashley* v. *Supervisors*, 83 Fed. Rep. 534, 537; *Woodside* v. *Ciceroni*, 93 Fed. Rep. 1; *Collins* v. *Ashland*, 112 Fed. Rep. 175, 178; *Adams* v. *Shirk*, 117 Fed. Rep. 801, 805; *Cole* v. *Ry. Co.*, 140 Fed. Rep. 944, 946.

The transfer to the Nevada corporation was upon a valuable consideration, and consequently no trust resulted in favor of the California corporation. 15 Am. & Eng. Ency. of Law, 2d ed., p. 1125; *St. John* v. *Benedict*, 6 John Ch. N. Y. 111; Civil Code of Cal., § 1614.

The dissolution or non-dissolution of the California corporation is entirely immaterial.

The recital in the agreement that the stock of the Nevada corporation could not be distributed to the stockholders of the California corporation prior to dissolution correctly states the law. *Kohl* v. *Lilienthal*, 81 California, 378.

The provision, also, that the voting power of the stock should

be separated from the legal title and vested in the stockholders of the California corporation is entirely valid under the law of the State of California. *Smith* v. *S. F. & N. P. Ry. Co.,* 115 California, 584.

It follows from this that the California corporation was as effectually eliminated as if it had been absolutely dissolved. The transfer to the Nevada corporation was an absolute one, without any understanding, express or implied, that the property should ever be reconveyed, and the case of *Lehigh Min. & Mfg. Co.* v. *Kelly,* 160 U. S. 327, has no application to such a transfer.

It matters not how closely related two corporations may be, nor what similarity there may be in names, incorporators, stockholders, officers and purposes, they will be considered distinct so far as Federal jurisdiction is concerned. *Louisville Co.* v. *Louisville,* 174 U. S. 552, 563; *St. Louis* v. *James,* 161 U. S. 545, 559; *Lehigh M. & M. Co.* v. *Kelly,* 160 U. S. 327, 347; *Nashua & L. R. Corp.* v. *R. Corp.,* 136 U. S. 356, 373; *Muller* v. *Dows,* 94 U. S. 444; *Goodwin* v. *New York &c. Co.,* 124 Fed. Rep. 358, 364; *Missouri Pac. Ry.* v. *Meeh,* 69 Fed. Rep. 753, 755; *Farnham* v. *Canal Corp.,* 1 Sumn. 46, 62; *S. C.,* Fed. Cas. No. 4,675; *Racine Co.* v. *Farmers Co.,* 49 Illinois, 331.

*Mr. James F. Peck* and *Mr. Frederic D. McKenney,* for appellee:

The Circuit Court properly disregarded the superficial aspect of complainant as a separate and distinct corporation. In determining the jurisdictional question it had the right to look through the web of the artificial corporate entity and find the real parties in interest. *Oriental Investment Co.* v. *Barclay,* 25 Tex. Civ. App. 558; *Venner* v. *Great Northern Co.,* 209 U. S. 24; *Lehigh Mining &c. Co.* v. *Kelly,* 160 U. S. 327.

The interests of the California corporation in the Nevada corporation, this complainant, are exclusive and supreme. The two corporations are so identical in every material incident that the suit is not really and substantially between

citizens of different States. *Lehigh Mining &c. Co.* v. *Kelly,* 160 U. S. 327, 340; *Waite* v. *Santa Cruz,* 184 U. S. 325.

The pretended change of corporate residence was made for the purpose of creating a case for Federal jurisdiction, and the lands and water rights in dispute were conveyed to the Nevada corporation for that purpose. The Circuit Court was justified by the evidence in finding that fact.

There can be little, if any, doubt that the removal was not with a *bona fide* intention of changing the corporate domicil. *Butler* v. *Farnsworth,* 4 Wash. C. C. 101, 103; *Morris* v. *Gilmer,* 129 U. S. 328, 329; *Lehigh Mining &c. Co.* v. *Kelly,* 160 U. S. 327–340.

So far as Federal jurisdiction is concerned, and for jurisdictional purposes in a case like this, the citizenship of the California corporation of Miller & Lux determines the question of Federal jurisdiction in this case. *Goodwin* v. *Boston & M. R. R.,* 127 Fed. Rep. 986, 989.

Mr. Justice Harlan delivered the opinion of the court.

This suit was brought in the Circuit Court of the United States for the Southern District of California by "Miller & Lux, Incorporated," a corporation of Nevada, against the East Side Canal & Irrigation Company, a corporation of California.

The case is here upon a certificate under the act of Congress of March 3, 1891, c. 517, 26 Stat. 826, relating to the jurisdiction of the Circuit Court as affected by § 5 of the act of March 3, 1875, c. 137, 18 Stat. 470, 472. That section provides that if, in any suit commenced in a Circuit Court or removed from a state court to a Circuit Court of the United States, it shall appear at any time to the satisfaction of said Circuit Court that such suit "does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants,

for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed as justice may require, and shall make such order as to costs as shall be just; but the order of said Circuit Court dismissing or remanding said cause to the state court shall be reviewable by the Supreme Court on writ of error or appeal, as the case may be."

In stating the object and scope of that act this court in *Williams* v. *Nottawa,* 104 U. S. 209, 211, referred to the act of 1875 and said: "In extending a long way the jurisdiction of the courts of the United States, Congress was specially careful to guard against the consequences of collusive transfers to make parties, and imposed the duty on the court, on its own motion, without waiting for the parties, to stop all further proceedings and dismiss the suit the moment anything of the kind appeared. This was for the protection of the court as well as parties against frauds upon its jurisdiction; for as was very properly said by Mr. Justice Miller, speaking for the court, in *Barney* v. *Baltimore,* 6 Wall. 280, 288, such transfers for such purposes are frauds upon the court, and nothing more."

In the answer of the defendant it is alleged that Miller & Lux, Incorporated, was organized as a corporation in Nevada, but to act only as an agent of "Miller & Lux," a corporation of California; that the California corporation was the owner of all the capital stock of Miller & Lux, Incorporated, which as a corporation had no existence except as a mere agency of Miller & Lux, the California corporation; that all the property held by the plaintiff was as such agent in order that suits could be brought and prosecuted in the United States courts; and that the plaintiff does not transact any business or do any act or thing other than such as may be necessary to carry out the purposes of the California corporation, "except to hold title to property for the purpose of prosecuting suits in the United States courts."

To these allegations the plaintiff made special replication,

evidence was taken as to their truth and the cause was submitted upon the issue thus made. The court found the allegation in the answer to be true; that the complainant held the title to the lands described in the bill for the purpose only of prosecuting and commencing this action in the Circuit Court of the United States, and that the lands were conveyed to plaintiff for that purpose; and it appearing to the satisfaction of the court that the Nevada corporation had been collusively made a party plaintiff for the purpose of creating a case cognizable by the Circuit Court of the United States, and that the suit did not really and substantially involve a dispute or controversy within the jurisdiction of that court, the bill was dismissed.

It was established by the evidence and the court found as follows:

Henry Miller and Charles Lux were partners prior to and up to the death of Lux, one of the parties, which occurred March 15, 1887.

In April, 1897, the heirs of the deceased partner and Miller, the surviving partner, wishing to have the partnership business liquidated and its assets distributed among those entitled thereto, made an agreement to form a corporation under the laws of California and transfer to it all the property of the partnership, each person to receive in lieu thereof capital stock proportioned to his interest in the partnership. Pursuant to that agreement the corporation of "Miller & Lux" was organized in California on the fifth day of May, 1897; to it was conveyed the property of the partnership and the stock of the corporation was distributed as provided in the agreement.

On the seventeenth day of December, 1900, the California corporation of Miller & Lux commenced an action in the Superior Court of Merced County, California, against the present defendant the East Side Canal & Irrigation Company, a California corporation. The object of that suit was to have the latter corporation perpetually enjoined from obstructing the natural flow of the waters of San Joaquin River and its branches, along and

bordering on which the California corporation of Miller & Lux claimed certain lands, as well as from interfering with the waters of that river, above those lands and to their injury.

On the twelfth day of June, 1905—the above suit in the state court still being on the docket—the California corporation and the stockholders owning more than two-thirds of its capital stock, entered into an agreement that they would at once form a corporation under the laws of Nevada with an authorized capital of $12,000,000—all of such capital stock to be issued and be deemed fully paid up—each director of the California corporation of Miller & Lux to be an incorporator of the Nevada corporation and to subscribe two shares of such capital stock to be issued as fully paid up stock of the new corporation.

That agreement stated that the laws of California were unsatisfactory and in many particulars uncertain and unsettled, "particularly as to dividends, a matter of the most vital importance to us, and as to which litigation is now pending and undetermined." These difficulties, it was said, did not exist to the same extent under the laws of Nevada. Among the reasons assigned in the agreement for the formation of the Nevada corporation was the belief, on the part of the stockholders of the California corporation, that their rights in litigated cases would be "most fully protected and conserved in the Federal courts, to which corporations formed in other States are entitled to resort."

The above agreement provided that upon the formation of the Nevada corporation all the property, real and personal, of the California corporation should be transferred and conveyed to the Nevada corporation, and that the capital stock of the latter corporation should be issued as fully paid up stock to the California corporation; and that after such transfer and conveyance were completed, and as soon as the law would permit, the California corporation should be dissolved by voluntary proceedings under the State Code of Civil Procedure of that State.

On the same day, June 12, 1905, the parties to that agree-

ment signed and acknowledged articles of incorporation for the proposed Nevada corporation of "Miller & Lux, Incorporated." All the capital stock of that corporation was issued to the California corporation. The directors of the California corporation became and are also the directors of the Nevada corporation. Each company had the same President, Vice-President, Secretary and Treasurer, and offices at the same place. "Said corporation," it was found, "are the same in name purposes, capitalization, directors, officers, office and place of business."

On the fifteenth day of June, 1905, the California corporation of Miller & Lux directed the dismissal of the suit brought in the state court. And on the same day the present suit was brought in the Circuit Court of the United States in the name of the Nevada corporation against the East Side Canal & Irrigation Company. The relief sought was substantially the same as that sought in the suit instituted in the state court.

Process in the suit brought in the Circuit Court by the Nevada corporation was served on June 17, 1905, and *on the same day* the California corporation formally dismissed its suit in the state court.

The California corporation had not been dissolved nor had it ceased to exist when the present suit was brought by the Nevada corporation. It was then in existence, with all of its powers unmodified. And it does not appear that any steps had or have been taken to disincorporate the California corporation. Nor can it be said when, if ever, that corporation will be dissolved.

We are of opinion that the court below did not err in dismissing the suit. The question raised by the record is substantially the same as that determined in *Lehigh Mining & Mfg. Co.* v. *Kelly*, 160 U. S. 327. That was an action involving the title to certain lands in Virginia in the possession of citizens of that Commonwealth, and of which lands a Virginia corporation claimed to be the owner. The individual stockholders and officers of the Virginia corporation organized a

corporation .in Pennsylvania, to which the former corporation conveyed all its rights, title and interest in the Virginia lands, without any valuable consideration. The stockholders in both corporations were identical. The admitted purpose of organizing the Pennsylvania corporation and conveying to it the lands there in question was to give the Circuit Court of the United States, sitting in Virginia, jurisdiction to determine the disputed controversy as to the lands. All this having been done, the Pennsylvania corporation instituted a suit in the Federal court in Virginia against the individual citizens of Virginia to recover the lands. When that suit was instituted the Virginia corporation still existed with the same stockholders it had at the time of the conveyance by it to the Pennsylvania corporation.

This court said (p. 331) that "The Virginia corporation still exists with the same stockholders it had when the conveyance of March 1, 1893, was made; and that, as soon as this litigation is concluded, the Pennsylvania corporation, if it succeeds in obtaining judgment against the defendants, *can be required by the stockholders of the Virginia corporation*, being also its own stockholders, to reconvey the lands in controversy to the Virginia corporation without any consideration passing to the Pennsylvania corporation."

After referring to several cases, this court, among other things, also said (p. 336): "In harmony with the principles announced in former cases, we hold that the Circuit Court properly dismissed this action. The conveyance to the Pennsylvania corporation was without any valuable consideration. It was a conveyance by one corporation to another corporation—the grantor representing certain stockholders, entitled collectively or as one body to do business under the name of the Virginia Coal and Iron Company, while the grantee represented *the same stockholders*, entitled collectively or as one body to do business under the name of the Lehigh Mining and Manufacturing Company. It is true that the technical legal title to the lands in controversy is, for the time, in the Penn-

sylvania corporation. It is also true that there was no formal agreement upon the part of that corporation 'as an artificial being, invisible, intangible, and existing only in contemplation of law,' that the title should ever be reconveyed to the Virginia corporation. But when the inquiry involves the jurisdiction of a Federal court—the presumption in every stage of a cause being that it is without the jurisdiction of a court of the United States, unless the contrary appears from the record, *Grace* v. *American Central Insurance Co.*, 109 U. S. 278, 283; *Bors* v. *Preston*, 111 U. S. 252, 255—we cannot shut our eyes to the fact that there exists what should be deemed an equivalent to such an agreement, namely, the right *and power* of those who are stockholders of each corporation to *compel* the one holding the legal title to convey, *without a valuable consideration*, such title to the other corporation. In other words, although the Virginia corporation, as such, holds no stock in the Pennsylvania corporation, the latter corporation holds the legal title, subject *at any time* to be divested of it by the action of the stockholders of the grantor corporation who are also its stockholders. The stockholders of the Virginia corporation— the original promoters of the present scheme, and, presumably, when a question of the jurisdiction of a court of the United States is involved, citizens of Virginia—in order to procure a determination of the controversy between that corporation and the defendant citizens of Virginia, in respect of the lands in that Commonwealth, which are here in dispute, assumed, as a body, the mask of a Pennsylvania corporation, for the purpose, and the purpose only, of invoking the jurisdiction of the Circuit Court of the United States, retaining the power, in their discretion, and after all danger of defeating the jurisdiction of the Federal court shall have passed, to throw off that mask and reappear under the original form of a Virginia corporation— their right, in the meantime, to participate in the management of the general affairs of the latter corporation not having been impaired by the conveyance to the Pennsylvania corporation. And all this may be done, if the position of the plaintiffs be

correct, without any consideration passing between the two corporations." Observing that the Pennsylvania corporation received the technical legal title for the purpose only of bringing a suit in the Federal court, the court proceeded (p. 342): "As we have said, that corporation may be *required* by those who are stockholders of its grantor, and who are also its own stockholders, at any time, and *without receiving therefor any consideration whatever*, to place the title where it was when the plan was formed to wrest the judicial determination of the present controversy from the courts of the State in which the land lies. It should be regarded as a case of an improper and collusive making of parties for the purpose of creating a case cognizable in the Circuit Court. If this action were not declared collusive, within the meaning of the act of 1875, then the provision making it the duty of the Circuit Court to dismiss a suit, ascertained at any time to be one in which parties have been improperly or collusively made or joined, for the purpose of creating a case cognizable by that court, would become of no practical value, and the dockets of the Circuit Courts of the United States will be crowded with suits of which neither the framers of the Constitution nor Congress ever intended they should take cognizance."

The present case is controlled by the one just cited. The two cases are alike in all material respects. Looking at the facts as they were when this suit was instituted in the Circuit Court, it must be taken that the transfer of the property of the California corporation to the Nevada corporation was merely formal—only a device by which to have the rights asserted by the California corporation in the state court determined by the Federal court rather than by the state court. The agreement that all the property of the California corporation should be transferred to the Nevada corporation was attended by the condition that all the capital stock of the new corporation should be issued—and it was issued—to the California corporation which remained in existence with full power as the owner of such stock to control the operations of the

Nevada corporation. If before the institution of this suit the California corporation had distributed among those entitled to it the stock of the Nevada corporation, issued to it as fully paid up stock, and had then ceased to exist or been dissolved, a different question might have been presented. But such is not this case. As the facts were, when this suit was brought the California corporation could at any time, even after this suit was concluded, have required the Nevada corporation, without any new or valuable consideration, to surrender all its interest in the property which it had obtained from the California corporation for the purpose of acquiring a standing in the Circuit Court of the United States. In other words, the Nevada corporation had no real interest in the property. Its ownership was a sham, in that it could at any time after the bringing of this suit have been compelled by the California corporation to dismiss the suit and abandon all claim to the property in question. It took the title only as matter of form, in order that the California corporation, or the stockholders interested in it, might, under the name of the Nevada corporation, invoke the jurisdiction of the Federal court and avoid the determination of the rights of the parties in the courts of the State. *Barney* v. *Baltimore City*, 6 Wall. 280, 288. The prosecution of the suit was really for the benefit of those who were interested in the California corporation.

We do not intend by what has been said to qualify the general rule, long established, that the jurisdiction of a Circuit Court, when based on diverse citizenship, cannot be questioned upon the ground *merely* that a party's motive in acquiring citizenship in the State in which he sues was to invoke the jurisdiction of a Federal court. But that rule is attended by the condition that the acquisition of such citizenship is real, with the purpose to establish a permanent domicil in the State of which he professes to be a citizen at the time of suit, and not fictitious or pretended. *Morris* v. *Gilmer*, 129 U. S. 315, 328. In that case the question was whether the plaintiff who was residing with his adversary in Alabama actually acquired such

a domicil in Tennessee as entitled him to bring suit in the Federal court, sitting in Alabama. This court said: "Upon the evidence in this record, we cannot resist the conviction that the plaintiff had no purpose to acquire a domicil or settled home in Tennessee, and that his sole object in removing to that State was to place himself in a situation to invoke the jurisdiction of the Circuit Court of the United States. He went to Tennessee without any present intention to remain there permanently or for an indefinite time, but with a present intention to return to Alabama as soon as he could do so without defeating the jurisdiction of the Federal court to determine his new suit. He was, therefore, a mere sojourner in the former State when this suit was brought. He returned to Alabama almost immediately after giving his deposition. The case comes within the principle announced in *Butler* v. *Farnsworth*, 4 Wash. C. C. 101, 103, where Mr. Justice Washington said: 'If the removal be for the purpose of committing a fraud upon the law, and to enable the party to avail himself of the jurisdiction of the Federal courts, and that fact be made out by his acts, the court must pronounce that his removal was not with a *bona fide* intention of changing his domicil, however frequent and public his declarations to the contrary may have been.'"

In the present case, although the Nevada corporation appeared, upon the face of the record, to be the owner of the rights which the California corporation had asserted in the state court, it was, when this suit was brought, only the representative of the California corporation and its stockholders. The latter corporation holding all the stock and having the same directors and officers as the Nevada corporation, could control the suit brought by the Nevada corporation, and, in the event of a favorable decree, could have compelled it to surrender or abandon all its claims to the California corporation, which was still in existence when this suit was brought.

As the Nevada corporation was formed by the direction of the California corporation, its stockholders and officers, for

the purpose only of having the matters in dispute between the California corporation and the East Side Canal & Irrigation Company determined in the Federal court rather than in the state court where they were pending and undetermined; as the Nevada corporation assumed to be the owner of the property rights which the California corporation had asserted against the Canal & Irrigation Company only that it might have a standing in the Federal court as a litigant in respect of those rights; and as the California corporation could have controlled the conduct of the suit brought by the Nevada corporation at any time after it was brought, and up to the date of the decree below, and could have required the Nevada corporation, in the event of a decree in its favor, to transfer the benefit of such decree to the California corporation, without any new or valuable consideration, we hold that the suit was properly dismissed under the fifth section of the act of 1875 as one in which the Nevada corporation was organized and collusively made plaintiff in the suit in the Federal court simply for the purpose of creating a case cognizable by that court.

*Decree affirmed.*