### O'NEAL et al. v. JONES.
#### No. 10921.

Court of Civil Appeals of Texas. Dallas.
Dec. 13, 1930.

Rehearing Denied Jan. 17, 1931.

Howth, Adams & Hart, of Beaumont, for appellants.

Marion S. Church and Coker, Wilson, Rhea & Neel, all of Dallas, for appellee.

LOONEY, J.

This appeal is from an order overruling appellants' pleas of privilege. For a num-ter of years John L. Jones, E. C. O'Neal, and J. A. Allen were partners, under the style of O'Neal Furniture Company, engaged in the wholesale and retail furniture business, owning and operating stores in Jefferson, Orange, Harden, Harris, and Galveston counties. Differences having arisen between the partners, a suit was filed in the Forty-Fourth district court of Dallas county by O'Neal and Allen against Jones, for dissolution, an accounting, division of firm assets, and for final settlement, in which a receiver was appointed, who took possession of all properties and assets of the firm. The suit was dismissed as the result of an agreement by the parties to dissolve their partnership, in which they provided for an accounting, partition of properties, and final settlement. Under the terms of the agreement, John L. Jones was awarded the Houston store and smaller stores forming the Houston group, and O'Neal and Allen were awarded the Beaumont store and stores forming the Beaumont group; it being stipulated that all business liabilities, assets, accounts receivable, etc., of each store should continue and be considered a part of the store to which they pertained, however, not including real estate, except plaintiff's interest in one tract which he agreed to sell to O'Neal and Allen for $9,000. Other pertinent provisions of the agreement will appear later.

This suit was brought by Jones against O'Neal and Allen, to recover the amount alleged to be due him under the provisions of the dissolution agreement, and the O'Neal Furniture Company, a corporation, was made defendant on allegations to the effect that in pursuance of a fraudulent scheme to hinder and delay plaintiff and place beyond his reach the partnership assets delivered to them under the agreement, O'Neal and Allen caused the corporation, a mere "dummy," to be chartered, and transferred to it all assets pertaining to the Beaumont group of stores, including accounts and records, upon which plaintiff claims an equitable lien for the amount due him on settlement.

Each defendant urged a plea of privilege to be sued in Jefferson county. Plaintiff contested these pleas: As to defendants O'Neal and Allen, on the ground that they contracted in writing to perform the obligations of the dissolution agreement in Dallas, the county of venue; therefore, venue was properly laid as to them, under subdivision 5, art. 1995, R. S. 1925; that venue was properly laid as to the O'Neal Furniture Company, under subdivision 29a of the venue statute, enacted at the First Called Session of the Fortieth Legislature (1927), c. 72, § 2 (Vernon's Ann. Civ. St. art. 1995, subd. 29a), in that under the facts the said corporation is a necessary party to the suit.

The evidence introduced on the hearing is

comprehended within the following stipulations, to wit:

"It is stipulated and agreed by the defendants, E. C. O'Neal, J. A. Allen and the O'Neal Furniture Company with the plaintiff, John L. Jones, that it shall not be necessary for said plaintiff to introduce any evidence on the pleas of privileges and controverting affidavits filed in this cause and now on hearing other than the contract and plaintiff's original petition and the defendants rest their plea of privilege solely on the law presented thereon, and it is further admitted that the defendants, E. C. O'Neal and J. A. Allen, have transferred to the O'Neal Furniture Company all of the assets received by them from the partnership of the Jones O'Neal Furniture Company set out in plaintiff's Original Petition."

Although the dissolution agreement is quite lengthy, we believe the following are its provisions pertinent to our present inquiry: Otis Allen and John L. Jones, Jr., were selected to make a full and complete inventory of all stocks, goods, wares, and merchandise in the stores of the late firm, with authority to appraise and finally determine the reasonable market value of the properties, except real estate leases, real property, and accounts receivable; they were required to begin the work of inventorying within five days from the date of the contract and to conclude as quickly as possible; the amount shown to be due on accounts receivable, as reflected on general ledgers, should be accepted as correct; the accounts to be separated into two groups, those belonging to the Houston group to be settled for at 65 cents on the dollar, and those belonging to the Beaumont group at 70 cents on the dollar; O'Neal and Allen were awarded the Beaumont group and all properties and assets pertaining thereto; Jones was awarded the Houston group and all properties and assets pertaining thereto; it being further provided that either party should have the right, at his own expense, within 90 days from the date of the contract, to have an audit made of all partnership business and transactions, and that the audit then in progress by J. F. Collins should be continued until concluded, at the expense of the plaintiff.

Paragraphs 14 and 15 of the contract are copied in full, and read as follows:

"(14) It is further understood and agreed that when the final account between the parties hereto is had and stated, that the amount due and payable to John L. Jones by E. C. O'Neal and J. A. Allen, if any, shall be the joint and several obligations and liability of each of said parties, O'Neal and Allen, and shall be payable to John L. Jones in Dallas, Texas, in installments of not less than Five Thousand Dollars ($5000) per month, which installments shall bear interest from date until paid at the rate of six per cent (6%) per annum, interest to be computed and paid each six months, and the first of which installments shall be due and payable on the date the amount is fixed and agreed upon, and a like installment on the same day of each and every succeeding month thereafter until said amount of indebtedness, both principal and interest, shall be fully paid and satisfied. Failure to pay any installment hereunder when due, either of principal or interest, shall entitle party of the first part (Jones) at his election to mature the entire indebtedness and declare same due.

"It is further agreed that this indebtedness shall be evidenced by a promissory note to be dated when the balance, if any, found to be due to John L. Jones is definitely ascertained, said note to be in the amount thereof, less the initial payment as above provided, signed by E. C. O'Neal and J. A. Allen as joint makers and payable to John L. Jones at Dallas, Texas, in installments of not less than Five Thousand Dollars ($5000) per month, as herein provided, and bearing six per cent (6%) interest from date of said note until paid, which interest shall be computed and paid each six months from date, and providing the usual agreement as to acceleration of maturity and attorneys' fees of ten per cent. (10%) if placed in the hands of an attorney for collection, or if collected through the Probate, Bankruptcy or other courts.

"(15) It is expressly understood and agreed that any and all moneys due under the terms hereof to J. A. Allen and E. C. O'Neal shall be due and payable to said parties at Beaumont, Texas, and that any and all moneys due or to become due to John L. Jones shall be due and payable at Dallas, Texas."

Among plaintiff's allegations, accepted as true under the stipulations, are the following: "That since the execution of said contract this plaintiff has at all times used his utmost efforts to in good faith carry out the terms and provisions thereof and to effect a final settlement with the defendants, O'Neal and Allen, and has spent much time and money in sending accountants and auditors to the places of business of said defendants, where they have waited for days at a time for the production of the records of said partnership and the aid and assistance of said defendants in auditing said business and making the settlement thereof contemplated by the provisions of said contract, but on account of the refusal of said defendants to produce the records in their possession and to render any sort of cooperation, plaintiff's efforts to effect a final settlement of said business have been fruitless, and all plaintiff has been able to accomplish toward such a settlement has been to procure an inventory of the goods, wares and merchandise in the various stores and a complete check and list of the accounts receivable in the stores under his control known as the

'Houston Group,' and but a partial and incomplete audit, check and list of the accounts receivable of the stores known as the 'Beaumont Group,' under the control of the defendants." That by reason of the settlement of the business of said partnership, as provided for in said contract, the difference in values of inventories, advances made by plaintiff to and for said partnership, withdrawals by defendants, and other proper charges, said defendants E. C. O'Neal and J. A. Allen are indebted, liable, and bound to pay to him, at Dallas, Tex., the sum of $111,173.77, a more particular statement and itemization of said items and charges being, to wit: (Here follows an itemized statement aggregating the sum mentioned). Plaintiff further alleged that he paid or became obligated to pay a larger amount of the partnership indebtedness, by $10,000, than the amount paid by O'Neal and Allen, or for which they had become obligated to pay; hence, in addition to the amount above stated, they were indebted to him in the sum of $10,000; furthermore, on account of defendants' alleged defaults, plaintiff had declared all sums owing him under the contract immediately due and payable.

The contention of O'Neal and Allen is that the agreement was for an accounting to determine whether on settlement they owed plaintiff or he owed them, and the amount in either case; that they did not obligate themselves to pay money or perform any part of the contract in Dallas county, but simply to execute notes payable to plaintiff in Dallas county in the event they were shown to be due him anything as the result of an accounting.

■■■ We cannot accept this construction of the dissolution agreement; its paramount obligation is for the payment of money; all others, including the provision for an accounting, are mere incidents and means to that end. On the breach of the agreement by O'Neal and Allen, plaintiff's cause of action accrued for the full amount, notwithstanding parts of the whole would not have been due, had the accounting and settlement been consummated according to the provisions of the contract.

The question under consideration, in our opinion, is ruled by Parr v. McGown (Tex. Civ. App.) 98 S.W. 950, 951; Young v. Dalton, 83 Tex. 497, 499, 18 S. W. 819; McKaughan v. Kellett-Chatham Mach. Co. (Tex. Civ. App.) 67 S. W. 908.

It is contended that the O'Neal Furniture Company was improperly sued in Dallas county, not being a necessary party because not a party to the written contract, and although in possession of certain properties formerly owned by the late firm, that plaintiff had no lien thereon as basis for bringing the corporation into the suit out of the county of its residence.

Plaintiff alleged that, upon the execution of the dissolution agreement, all firm properties pertaining to the Beaumont Group of stores were awarded to and taken possession of by O'Neal and Allen, amounting in value to the sum of $485,684,94, upon which he claimed a lien to secure the amount to which he is entitled on settlement of the partnership; that possession of these properties was procured by O'Neal and Allen through fraudulent methods, in that, by representing to plaintiff their willingness to make an accounting and execute the notes mentioned in the contract, induced him to enter into the agreement and have the suit pending in the Forty-Fourth district court of Dallas county dismissed, and the receiver, then in possession of all the firm's properties, discharged, whereas in truth and in fact defendants did not intend to render an accounting nor execute and pay the notes according to the agreement, their purpose being to fraudulently secure the release of the properties from the receiver, secure possession, and place same out of the reach of plaintiff; that in pursuance of said fraudulent design, they procured a charter for the "O'Neal Furniture Company" and transferred to it all the firm assets apportioned to them on dissolution, for the sole purpose of hindering, delaying, and defrauding plaintiff; that said corporation is a mere "dummy," under the management of O'Neal and Allen, and through its instrumentality they control said properties, including books and records, have removed and secreted the accounts receivable, and all evidence relating thereto, and refuse plaintiff access to same.

■■ In view of these allegations, established facts by stipulation, the corporate entity of the O'Neal Furniture Company must be ignored, and the corporation held to be simply the alter ego of O'Neal and Allen.

In Re Rieger et al., reported in (D. C.) 157 F. 609, a case in bankruptcy was under consideration, in which the assets of a corporation owned by the bankrupt firm were being administered as a part of the bankruptcy estate. The court announced the doctrine that a corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not, in a proper case, ignore its existence to preserve rights or circumvent fraud. Commenting on this decision, Wormser, in his work entitled "Disregard of the Corporate Fiction and Allied Corporate Problems," at page 49, said: "* * * The argument, of course, was made in behalf of the bankrupt and the corporation that the corporation existed as a separate and distinct entity. The court brushed aside this contention and declared that the doctrine of corporate entity is 'not so sacred' that courts, looking through shams and forms to the actual substance of things, may not ignore the concept in order to preserve the rights of in-

nocent parties or to circumvent fraud. The corporation, it was pointed out, was organized merely to give these disingenuous individuals a double line of credit, and to hinder and delay their creditors in the event of insolvency. * * * The corporate organization was but an alter ego of the partnership. * * * One was subsidiary and auxiliary to the other. To allow the doctrine of corporate entity to intervene would be to convert a court of justice into a public laughing-stock."

To the same effect, see Lehigh Min. & Mfg. Co. v. Kelly, 160 U. S. 328, 16 S. Ct. 307, 40 L. Ed. 444; Miller & Lux v. East Side etc., Co., 211 U. S. 293, 29 S. Ct. 111, 53 L. Ed. 189; Buie v. Chicago, etc., 95 Tex. 51, 65 S. W. 27, 55 L. R. A. 861.

There is another reason why, in our opinion, the corporation was shown to be a necessary party. O'Neal and Allen transferred to it all properties, books, records, etc., awarded to them on dissolution, and the corporation is now nominally in possession and control. Under a settled principle of equity, plaintiff has an implied lien upon all these assets for the amount due him on settlement. See 47 C. J. 1183, § 877, and authorities cited; Levin v. Steinle (Tex. Civ. App.) 200 S. W. 1137.

We are of opinion that the trial court did not err in overruling the pleas of privilege, and its judgment is therefore affirmed.

Affirmed.

### On Motion for Rehearing.

In their motion for rehearing defendants insist that we misinterpreted the stipulation between the parties set out in the original opinion and erred to their prejudice, in writing into the record that the effect of the stipulation was an admission by them that the allegations of plaintiff's original petition, charging a breach of the dissolution agreement by hindering and preventing an audit, as provided therein, and allegations charging fraud in the manner in which the execution of the dissolution agreement was brought about, were true; that the opinion reflects unjustly upon them and may in the future be used to their prejudice, when the case is tried upon its merits; that the purpose of the stipulation was to obviate the necessity for introducing testimony in order to obtain a ruling on the question of law involved, that is, assuming that defendants did in fact owe plaintiffs money then due and payable under the terms of the contract, whether or not the contract itself, as pleaded by plaintiff, obligated defendants to pay plaintiff in Dallas county, or merely obligated them to enter into another contract to be performed in Dallas county.

We do not think we misinterpreted the stipulation; its meaning is so plain and terms so unambiguous that it could not well be misinterpreted, for it plainly states that it would not be necessary on the hearing of the contests of pleas of privilege for plaintiff to introduce any evidence, other than the contract for dissolution of the partnership, and plaintiff's original petition. We understood that the purpose of the stipulation was to immediately bring the court to a decision of the question of law involved, as stated by appellants, and interpreted the stipulation to mean that, for purposes of the hearing of said contests, only, were plaintiff's allegations to be considered as established; any other view of the matter would render the stipulation, as to the introduction in evidence of plaintiff's original petition, altogether meaningless. We did not interpret the stipulation, however, as an admission by defendants that plaintiff's allegations were in fact true, nor did we so find; these allegations were reproduced, in part, in the opinion, because under the terms of the stipulation they were properly before us for consideration and were, in our opinion, germane to the questions under discussion.

With this understanding, it can neither be correctly said nor implied that the opinion in any sense reflects upon defendants, nor would it be proper, on the trial of the case, to make use of the stipulation or the opinion, for any purpose, to the prejudice of defendants.

We have carefully considered all grounds urged for rehearing and, finding no error, the motion is overruled.

Overruled.