Ray L. GLENNY et al., Plaintiffs-
Appellants,

v.

AMERICAN METAL CLIMAX, INC., and
AMAX Lead & Zinc, Inc.,
Defendants-Appellees.

No. 73–1494.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 10, 1974.

Decided March 19, 1974.

Raymond T. Dahlberg, Great Bend, Kan. (H. Lee Turner, Great Bend, Kan., B. J. Cooper, Oklahoma City, Okl., and Arthur W. Skaer, Jr., Wichita, Kan., on the brief), for plaintiffs-appellants.

Ben L. Burdick and Clyde A. Muchmore, Oklahoma City, Okl. (L. E. Stringer, Oklahoma City, Okl., on the brief), for defendants-appellees.

Before HILL, BARRETT and DOYLE, Circuit Judges.

HILL, Circuit Judge.

Appellants, landowners in the vicinity of the smelter belonging to Blackwell Zinc Company, brought this action against the smelter's parent companies American Metal Climax, Inc. (AMAX) and AMAX Lead & Zinc, Inc. (ALZ) to enjoin the operation of the smelter and to recover compensatory and punitive damages totaling $4,998,414. Appellees AMAX and ALZ thereafter filed a motion to dismiss pursuant to Rule 19(b), F.R.Civ.P., on the ground that the smelter's owner and operator, Blackwell Zinc Company, was an indispensable party to the lawsuit. The United States District Court for the Western District of Oklahoma, after determining that Blackwell Zinc was an indispensable party and that appellants have a satisfactory alternative forum in state district court, sustained appellees' motion to dismiss. This appeal followed.

Plaintiffs filed their original action on March 31, 1972, against Blackwell Zinc and AMAX. The complaint in that action alleged both defendants were corporations incorporated under the laws of New York and had their principal place of business in the State of New York. On May 8, 1972, defendant Blackwell Zinc moved to dismiss the plaintiffs' action on the basis that the federal courts lacked subject matter jurisdiction, alleging a lack of diversity of citizenship between the parties since Blackwell Zinc's principal place of business was in Oklahoma and most of the plaintiffs were Oklahoma residents. The district court thereafter entered a protective order limiting discovery to matters relating to the question of jurisdiction. In compliance with the protective order appellants took depositions of James E. Gorman, Blackwell Zinc's plant manager, and James M. Frazier, Blackwell Zinc's plant controller. In addition answers to interrogatories were filed.

On October 26, 1972, defendant Blackwell Zinc's motion to dismiss for lack of subject matter jurisdiction was granted. Notice of appeal from the order was filed but later voluntarily dismissed by appellants upon filing their second action, the case presently under consideration. The second action was filed against defendants AMAX and ALZ. Appellants asserted in this action that ALZ was a wholly owned, operated and controlled subsidiary of AMAX. Furthermore, plaintiffs asserted Blackwell

Zinc was a wholly owned, operated and controlled subsidiary of ALZ; that ALZ was nothing more than a subdivision, division, or department of AMAX; and that Blackwell Zinc occupied the same position in relationship to ALZ. Because of these relationships appellants asserted that at all times material to their action Blackwell Zinc, in its activities connected with the smelter, had operated as a mere agent, instrumentality and alter ego of appellees.

On April 5, 1973, defendants moved to dismiss the instant proceeding pursuant to Rule 19(b), F.R.Civ.P. for want of an indispensable party. During arguments on this motion all parties agreed that the partial discovery of the first action should be included in the record. From all the evidence before the court the trial judge determined that Blackwell Zinc was an indispensable party and accordingly dismissed the action.

Prior to dismissal of the instant case, appellants commenced a substantially identical action in the District Court of Kay County, Oklahoma, against Blackwell Zinc. Subsequent to the dismissal, appellants joined AMAX and ALZ in the state court action. That action is still pending.

On appeal we note that two issues are presented for our consideration. First, did the district court err in holding that Blackwell Zinc was an indispensable party to the instant proceedings? Second, did the district court err in dismissing appellants' complaint against AMAX and ALZ for want of an indispensable party? We answer both these questions in the negative and accordingly affirm the district court's decision.

■ Under Rule 19(a) we must first determine whether Blackwell Zinc is a person to be joined if feasible. Rule 19(a)(2)(i) provides that a person should be joined if "he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest." The evidence shows that Blackwell Zinc is a multimillion dollar corporation which has existed and operated in Kay County, Oklahoma, for over half a century. It employs 800 people, all of whom work at its smelting plant near Blackwell, Oklahoma. Its principal place of business is located near Blackwell and it has no plant, equipment or operating assets outside the State of Oklahoma. Because appellants are demanding monetary and injunctive relief for damages caused solely by this smelter, we believe that Blackwell Zinc, although a wholly owned subsidiary of ALZ and AMAX, has at least an interest in the subject of this action. Without its joinder, Blackwell Zinc's ability to protect that interest may be impaired.

■ The second question confronting us is whether or not under Rule 19(b) the action should be dismissed for want of an indispensable party. Rule 19(b) enumerates four factors to be evaluated by the court once it has determined that the joinder of a person or persons described in Rule 19(a) is desirable but not feasible. These factors include:

. . . first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absense will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Rule 19(b) does not state what weight is to be given each factor, 7 Wright, Federal Practice and Procedure, § 1608 (1972), and thus we must determine the importance of each factor on the facts of each particular case and in light of equitable considerations. In making this determination we recognize that operation of Rule 19(b) depends to a large degree on the careful exercise of discretion by the district court. Broussard v.

Columbia Gulf Transmission Co., 398 F. 2d 885 (5th Cir. 1968).

The first test to be considered is the extent to which "a judgment rendered in the person's absence might be prejudicial to him or those already parties." This test considers the need to protect absent persons from litigation adversely affecting their interests and the need to protect those who are parties from the threat of multiple actions. This test does not allow for mere theoretical possibilities but rather looks to the practical likelihood of prejudice and subsequent litigation. Schutten v. Shell Oil Co., 421 F.2d 869 (5th Cir. 1970). As a practical matter we do not believe appellees would be faced with multiple lawsuits if we elected to retain jurisdiction. After reviewing appellants' allegations and demands for relief we believe that any decision rendered in this court would effectively preclude future litigation in some other forum. We do believe, however, that any decision rendered would adversely affect Blackwell Zinc's interests and thus would constitute prejudice to the absent party. This conclusion is supported by the fact that appellants are asking nearly five million dollars for damage resulting from the operation of Blackwell Zinc along with asking the court to close down its operation. See McShan v. Sherrill, 283 F.2d 462 (9th Cir. 1960); Amerada Petroleum Corp. v. Rio Oil Co., 225 F.Supp. 907 (D.Wyo.1964).

The second factor listed in Rule 19(b) is "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided." This factor obligates the court to seek an alternative to dismissing the action if to do so will minimize the prejudicial effect. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). In the instant case, however, we do not perceive any alternative relief which will minimize the prejudicial effect to Blackwell Zinc. Appellants brought this action to recover for damages caused by operation of Blackwell Zinc's smelters and thus any available relief will of course directly affect Blackwell Zinc. Thus there is no satisfactory way to minimize the prejudice in Blackwell Zinc's absence.

The third factor in Rule 19(b) is "whether a judgment rendered in the person's absence will be adequate." As noted in the 1966 Advisory Committee Note to Rule 19, 39 F.R.D. 89, 93, this factor meshes with other factors, especially the "shaping of relief" mentioned under the second factor. And as we noted in discussing the second factor there is no way we can shape the relief to leave Blackwell Zinc unaffected. The same result is reached under the third factor; appellants are suing for damages caused by the smelter and thus only if Blackwell Zinc is present would we be able to grant the relief prayed for by appellants.

The final factor listed in Rule 19(b) is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Unquestionably appellants have a satisfactory forum available in state court. This conclusion is attested to by the fact that appellants already have filed an action in the District Court of Kay County, Oklahoma, against Blackwell Zinc, AMAX and ALZ seeking the same relief.

■ Based on the foregoing analysis we find that Blackwell Zinc is a party to be joined if feasible under Rule 19(a). Because joining Blackwell Zinc would destroy diversity of citizenship between all the parties, we looked to Rule 19(b) to determine whether the litigation could proceed in its absence. After analyzing the four factors set out in Rule 19(b) we believe Blackwell Zinc is a compulsory party and therefore we must affirm the district court's dismissal of this action for want of an indispensable party.

■ Appellants try to circumvent the mandate of Rule 19(b) by alleging that Blackwell Zinc is merely the "alter ego" of appellees. The court in Lang v. Colonial Pipeline Co., 266 F.Supp. 552 (E.D.

Pa.1967), aff'd 383 F.2d 986 (3d Cir. 1967), was confronted with the same argument and after analyzing congressional policy and reviewing pertinent Supreme Court decisions rejected the "alter ego" theory as a basis for retaining jurisdiction. The trial judge concluded that Congress did not intend federal courts to retain jurisdiction in all matters relating to diversity of citizenship. This is evidenced by the fact that in 28 U.S.C. § 1359 federal courts are denied jurisdiction in civil actions where a party has been improperly made or joined to invoke federal jurisdiction. In 28 U.S.C. § 1332(c) Congress has narrowed federal diversity jurisdiction by providing that a corporation shall be deemed a citizen both in its state of incorporation and the state where its principal place of business is located. 1 Moore's Federal Practice, ¶ 0.78[2] (2d ed.1948). These statutes, coupled with the fact that Congress has not enacted any legislation compelling retention of cases dealing with manipulation of corporate identity, convinced the judge that Congress did not make retention obligatory on federal courts when the jurisdictional issue centered around a "dummy subsidiary". Nor does it appear that the Supreme Court concerns itself with the "alter ego" question in deciding diversity of citizenship. Instead, the Court looks into the collusive activities of a parent company and its wholly owned subsidiary in deciding the jurisdictional question. See Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928); Miller & Lux, Inc. v. East Side Canal & Irrigation Co., 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189 (1908). The trial judge therefore concluded that he was not compelled to retain jurisdiction in a case where diversity is satisfied only by piercing the corporate veil. We agree with this reasoning.

In light of the foregoing analysis we find no error in the district court's dismissal of the instant action for want of an indispensable party. Admittedly, in a different factual setting retention of jurisdiction might be necessary, but not so in the case presently before us.