**PRUDENTIAL OIL CORPORATION,**
Plaintiff,

v.

**PHILLIPS PETROLEUM COMPANY,**
Defendant.

No. 67 Civ. 3748–CLB.

United States District Court,
S. D. New York.

June 17, 1975.

Gold, Farrell & Marks by Thomas R. Farrell, Leonard M. Marks, New York City, for plaintiff.

Sullivan & Cromwell by Robert Mac-Crate, David B. Rigney, Richard J. Urowsky, New York City, for defendant.

## MEMORANDUM DECISION

BRIEANT, District Judge.

By its complaint, filed on September 27, 1967, more than seven and one-half years ago, plaintiff, a New York corporation, sued defendant, a Delaware corporation having its principal place of business in Oklahoma, for relief upon four separate claims or causes of action. Most of the facts relied on occurred during the period 1961 to 1963.

All claims pleaded seek equitable relief and/or damages under New York law. As successor by a chain of assignments, hereinafter mentioned, from Prudential Oil Corporation, a Connecticut corporation, hereinafter "Prudential Connecticut", plaintiff seeks to enforce its rights under a claimed joint venture for the establishment of an oil refinery and petro-chemical facility in Puerto Rico. It alleges that its assignor, Prudential Connecticut, disclosed confidential proprietary information to defendant, and took and forebore from taking a variety of actions, in reliance on the alleged joint venture, and thereafter defendant appropriated the benefits of the joint venture for its own account. The legal theory of the claims pleaded has been stated variously as an equitable action to impress a trust, or for an accounting, or an action for damages as a result of an intentional tort arising out of misappropriation by defendant for its own use of details, specifications, ideas, concepts, innovations, information contacts, engineering data and designs furnished to defendant in trust and confidence, to be used solely in furtherance of the joint interests of the parties, or all of the above.

The relief requested includes (1) an accounting of the joint venture and division of the respective rights and interests of the parties; (2) impressing a trust on defendant's property; and (3) a judgment directing payment over to plaintiff of its rights in the venture.

No federal claims are pleaded, and the sole basis for jurisdiction is diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332(a).

For a more detailed factual exposition of the issues in this litigation, reference should be had to the memorandum decision dated April 4, 1975 filed herein by Chief Judge Edelstein, denying defendant's motion to strike plaintiff's jury demand. 392 F.Supp. 1018.

As noted, plaintiff shows (Complaint, ¶ 1) that it

"brings this action as assignee of all the right, title and interest to the claims asserted herein of Prudential Equities Corp., a Delaware corporation, which in turn was a successor in interest and assignee of the entire business, assets and properties of Prudential Oil Corporation, a Connecticut corporation."

The answer, filed October 20, 1967, pleads as a second affirmative defense, that "the court has no jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1359."

At our hearing held May 2, 1975, the taking of evidence on the issues raised by the motion was waived. The facts pertaining to subject matter jurisdiction are not in dispute, although there is sub-

stantial controversy with respect to the inferences to be drawn from those undisputed facts.

Defendant contends that the present plaintiff, referred to for convenience as "Prudential New York," "had been collusively made (sic) a party to this suit," and that consequently subject mater jurisdiction was wanting under the provisions of 28 U.S.C. § 1359. That latter statute provides as follows:

> "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

The parties prior to July 1974 had developed a "Statement and issue concerning jurisdiction" for a proposed pretrial order. It is clear that Prudential Oil Corporation, a Connecticut corporation, was incorporated in that State in 1959 and until October 1962, maintained its principal place of business at Greenwich, Connecticut. Thereafter, Prudential Connecticut had its principal place of business in New York.

Prudential Connecticut had been formed by Edward J. Willey and Nathan M. Shippee "for the purpose of offering for sale participations in administered oil and gas drilling exploration and development programs." (¶ 9, Affidavit of Nathan M. Shippee, filed April 29, 1975).

Early in 1965, Prudential Connecticut was reorganized as a Delaware corporation, also under the name of Prudential Oil Corporation (hereinafter "Prudential Delaware"). By the terms of the reorganization, Prudential Connecticut was dissolved, all of its assets, liabilities and goodwill were assigned to or assumed by Prudential Delaware, and Prudential Connecticut's shareholders received one share of Prudential Delaware stock for each share of Prudential Connecticut previously owned.

In the spring of 1966, the board of directors of Prudential Delaware approved the formation of two subsidiaries: America House, Inc., a Spanish corporation, the purpose of which was to develop a shopping center and office building complex in Madrid, Spain; and Prudential Polymer Co., a Puerto Rican corporation, for the "purpose of engaging in activities in connection with the Phillips petrochemical plant complex being constructed in Puerto Rico." (¶ 16, Shippee Affidavit, *ibid*).

In May of 1966, a draft of an unfiled, proposed complaint entitled in the Supreme Court of New York, New York County (Defendant's [Pre-Trial] Exhibit 221), was shown to one of defendant's officers. The draft complaint sought an accounting and damages for breach of fiduciary duties based on claimed wrongful acts of the defendant with respect to the Puerto Rican venture. This complaint was never served or filed, but was employed in discussions with defendant looking towards obtaining performance of the claimed joint venture agreement by Phillips, or a settlement.

In the summer of 1966, Prudential Delaware engaged in further corporate reorganization. On June 29, 1966 Prudential Delaware transferred to its wholly owned Delaware subsidiary, Prudential Drilling Funds, Inc. ("Prudential Funds"), all of its assets relating to its business in the management of oil and gas drilling ventures. It was contemplated that Prudential Funds would make a public offering of unit participations in oil and gas exploration and drilling programs and that the public offering could be accomplished more readily if the offeror had a clean balance sheet, separated from any of Prudential Delaware's other ventures. Prudential Funds had been incorporated on December 21, 1965, but did not begin business until the transfer. On July 13, 1966, effective July 15, 1966, Prudential Delaware changed its name to Prudential Equities Corp., supposedly to reflect more accurately the passive, holding company

quality of its post-reorganization operations.

As part of the same 1966 reorganization, plaintiff here, Prudential Oil Corporation, a New York corporation ("Prudential New York"), was incorporated on July 12, 1966 as a wholly-owned subsidiary of Prudential Equities Corp. On July 13, 1966, Nathan M. Shippee, Chairman of the Board of Prudential Delaware and incorporator of Prudential New York, elected himself and Patricia Morel, his secretary, as directors of Prudential New York. The directors elected Shippee to be President and Treasurer and Morel as Vice President and Secretary of the New York subsidiary. Also on July 13, 1966, Shippee, acting on behalf of Prudential Delaware, conveyed and assigned to Prudential New York the use of the name "Prudential Oil Corporation", and Prudential Delaware's interest in the joint venture with Phillips in the petrochemical complex in Puerto Rico, together with any "claims, rights or causes of action accruing or arising from any of the foregoing." Shippee, acting on behalf of Prudential New York, executed an instrument assuming the liabilities and obligations of the Delaware corporation in connection with the Puerto Rican venture.

At a meeting of the board of directors of Prudential Equities Corp., (Delaware) on September 11, 1967, Shippee reported to the board that efforts to settle the dispute with Phillips regarding the Puerto Rican venture had failed and that Prudential New York had no alternative but to commence suit against Phillips. The board of Prudential Equities authorized the officers of Prudential New York to retain counsel to work with counsel for Prudential Equities to prosecute an action against Phillips. (Minutes of the Meeting of the Executive Committee of the Board of Directors of Prudential Equities Corp., September 11, 1967, Exhibit 2 to Affidavit of Robert MacCrate, Esq., sworn to April 3, 1975).

Section 1359 of Title 28 was enacted to prevent the contrivance of federal diversity jurisdiction by·means of assignment and bars federal jurisdiction in any "civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. In particular, under § 1359, "[a] corporation cannot get into federal court merely by transferring its claim to a subsidiary, incorporated in some other state chosen with diversity in mind. . . ." C. Wright, Federal Courts § 31, at 102 (1970).

*Kramer* v. *Caribbean Mills, Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), holds that a federal district court lacked subject matter jurisdiction by reason of § 1359 where a Panamanian corporation assigned its interest in a contract with a Haitian corporation to an American attorney for purposes of collection. The Court found that the assignment was "improperly or collusively made" since the attorney paid one dollar as consideration for the assignment and re-assigned 95% of the proceeds of the collection to the Panamanian corporation. There, it was admitted that a substantial [subjective] motive for the assignment was to create federal diversity jurisdiction. See also *Miller & Lux, Inc.* v. *East Side Canal & Irrigation Company*, 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189 (1908).

*Green & White Construction Company, Inc.* v. *Cormat Construction Company*, 361 F.Supp. 125 (N.D.Ill.1973) applied § 1359 where an Illinois subsidiary assigned its claim to its Ohio parent corporation and thereby created diversity of citizenship as against an Illinois defendant. The Court observed that in transactions between a parent and wholly-owned subsidiary, the assignor corporation retained an interest in the claim because reassignment could be effected at will, holding:

"Corporate formalities should yield to realistic analysis, and it is obvious

that when a wholly-owned subsidiary assigns a claim to its parent, just as in the reverse situation, the same set of stockholders running both corporate forms can transfer title to that claim freely between them. In each case the transferor, whether it is the parent or the subsidiary, realistically retains a substantial pecuniary interest in and power over the outcome of litigation which it assigns to the other. The rationale of *Miller & Lux* [211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189 (1908)] prohibits such a transfer if made for the purpose of obtaining federal jurisdiction, regardless of whether it is made in the first instance by the parent or the subsidiary. While it is conceivable that a subsidiary could prove that an assignment was made to its parent, or vice versa, for legitimate commercial reasons independent of the desire to litigate in a federal court, it must bear a heavy burden of proof since the close relationship between parent and subsidiary necessarily presents opportunities for the collusive manufacture of such reasons." 361 F.Supp. at 128.

◼ As the Court noted on the hearing of this motion, the test for identifying collusive assignments is two-pronged. The first inquiry is whether the assignment is "of a transactional type which places nominal plaintiffs in a position to assert the real interest of another? This standard is objective and functional." *Farrell* v. *Ducharme,* 310 F. Supp. 254, 258 (D.Vt.1970). An assignment by a parent to its wholly-owned subsidiary, where as a matter of law an absolute right to compel reconveyance always exists, clearly places the assignee plaintiff in such a position. The second inquiry is whether the particular transaction was designed to acquire diversity jurisdiction. The standard here is subjective and "minor reasons born primarily in the light of hindsight . . . advanced before the court to camouflage an [assignment] where the only substantial purpose was the creation of jurisdiction" will not satisfy the edict of § 1359. *Farrell* v. *Ducharme, supra,* 261.

But if the assignment was made for a *bona fide* business purpose, wholly apart from acquiring federal jurisdiction over the instant claim, then it was not "collusively made . . . to invoke [federal] jurisdiction." 28 U.S.C. § 1359. See *Henley & Co.* v. *Miller Golf Equipment Corporation,* 300 F.Supp. 872 (D.P.R.1969); *National Surety Corporation* v. *Inland Properties, Inc.,* 286 F. Supp. 173 (E.D.Ark.1968).

◼ As noted, in 1966, Prudential Delaware engaged in a comprehensive plan of reorganization and inter-corporate assignments which had a bona fide business purpose, namely to facilitate an intended public offering of unit participation shares in its oil and gas drilling programs. In order to make Prudential Funds appear to be a more desirable investment, Prudential Equities (Prudential Delaware) created several single-purpose subsidiaries and assigned to each one a particular project that had been initiated by the parent corporation. In particular, Prudential Delaware intended to dissociate Prudential Funds from its more speculative ventures, such as its claimed interest in the Phillips petrochemical plant operation.[1]

---

1. Obvious to the Court, although not asserted in so many words at the argument, is a realization on the part of Prudential's sophisticated management, that before it could offer the drilling units to the public, it would have to comply with applicable provisions of the Securities Act of 1933, and "blue sky" laws in effect in various states. Almost without exception, such compliance requires disclosure to the potential investor of the certified financial statements of the issuer. A financial statement which contained reference to claimed participation in a joint venture disavowed by the purported joint venturer, and open to litigation, would present great difficulties in effecting compliance by full and fair disclosure without overstating or understating the value of the asset, or misleading with respect to the controversy with Phillips, and would raise questions in the minds of those officials charged with enforcing such disclosure requirements. Problems of that

In *National Surety Corporation* v. *Inland Properties, Inc., supra,* the Court found a sufficient business purpose, and an absence of collusion to fix jurisdiction, where an assignment of title to foreclosed property was made by a corporation, which was required to borrow heavily and did not want its balance sheet to reflect investments in fixed assets, to a corporation owned by a person associated with the assignor corporation, although the sole consideration for the assignment was a mortgage on the property. The desire of a corporation to make its balance sheet appear more simple and attractive to lenders and investors is a legitimate commercial concern present in this case, which negates any inference of a collusive assignment to create diversity.

The selection of New York as the state of incorporation for this subsidiary had a substantial purpose, quite apart from its litigation consequences. Prudential New York had only one asset, the right, if any, to participate in the Puerto Rican petrochemical plant venture with Phillips or to share the proceeds of that operation. Until such time as the differences between Phillips and Prudential were resolved, whether by negotiation or by litigation, it was unlikely that Prudential New York would require anything more than the caretaker efforts of the staff of the parent corporation which had its principal place of business in New York. From 1962 on, Prudential Connecticut and its corporate successors all had their principal places of business in New York.

On the same date that Prudential New York was incorporated, Prudential Land Company, Inc., another wholly-owned subsidiary, was incorporated in New York with the stated purpose of engaging in the acquisition and management of real property. Furthermore, Prudential Delaware had already formed Prudential Polymer, a Puerto Rico cor-

poration, "for the purpose of engaging in activities in connection with the . . Phillips project." (Minutes of the Meeting of the Board of Directors of Prudential Delaware, April 27, 1966, Exhibit J to Shippee Affidavit, filed April 29, 1975).

The entire course of Prudential Delaware's activities commencing in 1966 evidence an intention to effect a comprehensive plan of reorganization, designed to compartmentalize the various undertakings of Prudential Delaware and to isolate them from the proposed activities of Prudential Funds.

In sum, it appears that Prudential Delaware had a valid business purpose for making this assignment and that its selection of Prudential New York as the corporation to administer its rights in the claimed joint venture was one of several options reasonably available to Prudential's management, which would have had the concurrent effect of conferring federal diversity jurisdiction. This Court will not attempt to test this exercise of business judgment by wisdom acquired after the event.

Moreover, the assignment was made on July 13, 1966, some fourteen months prior to the commencement of this action. Although a draft complaint entitled for filing in New York state court had been prepared at the time that the assignment was made, plaintiff did not commence this action until a significant period of time had elapsed after the assignment.

It was not until September 11, 1967 that Shippee informed the Prudential Delaware Board of Directors that resolution of the dispute with Phillips had become impossible. It may be inferred that, during this fourteen month hiatus, there remained some expectation that amicable resolution of the dispute could be achieved, possibly on terms that would have permitted Prudential to participate actively in the Puerto Rican venture.

sort are not likely to smooth the way for sale to the public of oil and gas drilling units,

which have nothing to do with the Puerto Rican refinery.

· Under the circumstances of this case, the Court does not attach great significance to the fact that the sole asset of Prudential New York is its claim here, and that its sole current business activity is the prosecution of this action, because this was not the necessary consequence at the time the assignment was made. The commercial situation presented here differs markedly from a naked assignment by a parent corporation to a dummy subsidiary, incorporated on the eve of litigation with a view to obtaining federal jurisdiction. *Cf. Greater Development Company of Connecticut, Inc.* v. *Amerlung,* 471 F.2d 338 (1st Cir. 1973).

Accordingly, the Court finds that there is diversity jurisdiction, and that federal jurisdiction here has not been obtained by means of a collusive assignment, as prohibited by 28 U.S.C. § 1359. Defendant's motion to dismiss the complaint for lack of subject matter jurisdiction is denied.

 In reaching the conclusion that the assignment was not collusive, this Court has drawn inferences from uncontested facts demonstrated by admissions, answers to interrogatories, concessions of counsel made in Court, and affidavits, the veracity of which are not seriously traversed. In doing so, we are reaching conclusions from facts, rather than finding facts. Under the latter circumstance, our determination would be valid, and binding in the event of appellate review unless "clearly erroneous." Rule 52(a), F.R.Civ.P. See *Zenith Radio Corp.* v. *Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Biderman* v. *Morton,* 507 F.2d 396 (2d Cir. 1974). But here, an appellate court will be equally able to draw the inferences. As the Court of Appeals noted in *Dopp* v. *Franklin National Bank,* 461 F.2d 873, 879 (2d Cir. 1972):

> "This is not a case . . . where there was an evidentiary hearing below and the credibility of witnesses played an essential part in the district judge's determination. We are in as good a position as the district judge to read and interpret the pleadings, affidavits and depositions and thus have broader discretion on review."

This presents a difficult problem for both parties to this action, neither of which has requested an evidentiary hearing. The fact situation here is complex, affecting events which occurred many years ago. It would reflect poorly on the administration of justice if these parties engaged in an extensive trial of the underlying issues, the outcome of which later, upon appellate review of the final judgment, turned out to be void for want of subject matter jurisdiction. The situation may present a proper circumstance for appellate review of this interlocutory order, and the Court will, if requested, certify the question of subject matter jurisdiction for an interlocutory appeal pursuant to 28 U.S.C. § 1292 (b).